IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RON HENRY, JOSE OMAR MARTINEZ, CLAYTON GUILLORY, ANITA MARIE MOORE, RYAN SWITZER, JOSEPH SARI, and YURIY KILGISHOV, on Behalf of Themselves and All Others Similarly Situated, | § § § § § § § § § § § § § § | |
| PLAINTIFFS, | | CIV. NO. 14-CIV-7176 (AJN) |
| V. | | JURY TRIAL DEMANDED |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., DEFENDANTS. | | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Ron Henry, Jose Omar Martinez, Clayton Guillory, Anita Marie Moore, Ryan Switzer, Joseph Sari, and Yuriy Kilgishov ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this Second Amended Complaint against Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "Defendants" or "Chase") and in support thereof show as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs all worked as full-time employees jointly employed by Defendants JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A. within the meaning of the Fair Labor Standards Act, as amended 29 U.S.C. § 201, *et seq.* ("FLSA"). Likewise, Plaintiffs Joseph Sari and Yuriy Kilgishov were employed by Defendants JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A. within the meaning of New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, *et seq.* ("NJWHL").

2.      Defendants have willfully engaged in a pattern and practice of unlawful conduct

and policies by failing to compensate Plaintiffs in accordance with federal and state law by failing to: (a) properly record all hours worked by Plaintiffs; (b) maintain accurate records with respect to all hours worked by Plaintiffs; and (c) pay Plaintiffs minimum wages and/or all overtime compensation owed for hours that Defendants permitted or suffered Plaintiffs to work in excess of 40 hours in a workweek. As used herein, the phrase "overtime compensation" or "overtime wages" shall mean wages calculated at one and one-half the employee's regular rate of pay for all hours worked in excess of 40 hours in a workweek.

3.      Defendants' conduct as described herein is in willful violation of the FLSA and New Jersey law. Defendants' conduct also constitutes bad faith.

4.      Plaintiffs bring this action individually and on behalf of all those similarly situated as an FLSA collective action and as a Rule 23 class action under NJWHL.

5.      Plaintiffs, individually and on behalf of all others similarly situated who have worked for Chase during the requisite statutory period, bring this action to recover overtime compensation, minimum wages, unpaid wages, liquidated damages, applicable penalties, litigation expenses, expert witness fees, attorneys' fees, costs, pre-judgment and post-judgment interest, and all other available remedies under the provisions of the FLSA and NJWHL.

6.      Plaintiffs demand a jury trial.

## JURISDICTION

7.      This Court has federal question jurisdiction over this action conferred by 29 U.S.C. § 216(b) and by the provisions of 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce" and by the provisions of 28 U.S.C. § 1337.

8.     This Court also has supplemental jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because those claims derive from common facts.

9.     This Court has jurisdiction of this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (1) the class consists of at least 100 proposed members; (2) the matter in controversy is greater than $5,000,000 after aggregating the claims of the proposed class members, exclusive of interest and costs; and (3) at least some members of the proposed class have a different citizenship from Defendants.  28 U.S.C. § 1332(d)(2), (5)(B).

## VENUE

10.     Venue is proper in the Southern District of New York because a substantial portion of the acts or omissions giving rise to the claims alleged herein occurred within this District.

11.     As an alternative and independent basis, venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and because Defendant JPMorgan Chase & Co. maintains its principal place of business in this District.

## PLAINTIFFS

*Texas Residents*

12.     Plaintiff Ron Henry ("Henry") is a resident of Texas who was employed by Chase in Texas within the meaning of 29 U.S.C. § 203(e) from approximately September 23, 2009 through March 22, 2013.  Mr. Henry's Notice of Consent was filed on September 5, 2014.  Mr. Henry brings FLSA claims individually and behalf of other similarly situated Lead Tellers and Assistant Branch Managers.

13.     Plaintiff Jose Omar Martinez ("Martinez") is a resident of Texas who was employed by Chase in Texas within the meaning of 29 U.S.C. § 203(e) from approximately June

2, 2008 through August 31, 2012. Mr. Martinez's Notice of Consent was filed on November 25, 2014. Mr. Martinez brings FLSA claims individually and behalf of other similarly situated Private Client Bankers.

14. Plaintiff Clayton Guillory ("Guillory") is a resident of Texas who was employed by Chase in Texas within the meaning of 29 U.S.C. § 203(e) from approximately November 23, 2010 through April 17, 2012. Mr. Guillory's Notice of Consent was filed on November 25, 2014. Mr. Guillory brings FLSA claims individually and behalf of other similarly situated Loan Officers.

15. Plaintiff Anita Marie Moore ("Moore") is a resident of Texas who was employed by Chase in Texas within the meaning of 29 U.S.C. § 203(e) from approximately August 2011 through January 2013. Ms. Moore's Notice of Consent was filed on February 10, 2015. Ms. Moore brings FLSA claims individually and behalf of other similarly situated Loan Officers.

16. Plaintiff Ryan Switzer ("Switzer") is a resident of Texas who was employed by Chase in Texas within the meaning of 29 U.S.C. § 203(e) from approximately July 2010 through January 2014. Mr. Switzer's Notice of Consent was filed on February 11, 2015. Mr. Switzer brings FLSA claims individually and behalf of other similarly situated Assistant Branch Managers.

*New Jersey Residents*

17. Plaintiff Joseph Sari ("Sari") is a resident of New Jersey who was employed by Chase in New Jersey within the meaning of 29 U.S.C. § 203(e) and N.J.S.A. § 34:11-56a1(g) from approximately January 2013 through January 2014. Mr. Sari's Notice of Consent was filed on February 12, 2015. Mr. Sari brings FLSA claims individually and behalf of other similarly situated Loan Officers. Mr. Sari also brings claims under NJWHL, individually on behalf of a class of non-exempt employees who worked for Chase in New Jersey.

18. Plaintiff Yuriy Kilgishov ("Kilgishov") is a resident of New Jersey who was

employed by Chase in New Jersey within the meaning of 29 U.S.C. § 203(e) and N.J.S.A. § 34:11-56a1(g) from approximately January 2013 through January 2014. Mr. Kilgishov's Notice of Consent was filed on February 19, 2015. Mr. Kilgishov brings FLSA claims individually and behalf of other similarly situated Loan Officers. Mr. Kilgishov also brings claims under NJWHL, individually on behalf of a class of non-exempt employees who worked for Chase in New Jersey.

## DEFENDANTS

19.     Defendant JPMorgan Chase & Co. is a Delaware corporation that conducts business in the State of New York and maintains its corporate headquarters in this District. JPMorgan Chase & Co. is a financial services company that operates thousands of bank branches throughout the United States. JPMorgan Chase & Co. issues paychecks for Plaintiffs, as well as the putative collective action members and class members. JPMorgan Chase & Co. promulgates the corporate practices and policies that form the basis of Plaintiffs' claims in this lawsuit. J.P. Morgan Chase & Co. is engaged in interstate commerce, and its annual gross volume of sales or business conducted exceeds $500,000. JPMorgan Chase & Co. has entered an appearance herein.

20.     Defendant JPMorgan Chase Bank, N.A. is a nationally chartered bank that conducts business in the State of New York and in this District. JPMorgan Chase Bank, N.A. is a financial services company that operates thousands of bank branches throughout the United States. JPMorgan Chase Bank, N.A. issues paychecks for Plaintiffs, as well as the putative collective action members and class members. J.P. Morgan Chase Bank, N.A. promulgates the corporate practices and policies that form the basis of Plaintiffs' claims in this lawsuit. J.P. Morgan Chase Bank, N.A. is engaged in interstate commerce, and its annual gross volume of sales or business conducted exceeds $500,000. JPMorgan Chase Bank, N.A. has entered an appearance herein.

21.     Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. will be

referred to herein collectively as "Defendants" or "Chase." Any allegations that reference "Defendants" or "Chase" shall be in reference to both Defendants.

22.     At all relevant times to this action, Defendants were the joint employers of Plaintiffs within the meaning of 29 U.S.C. § 203(d) and NJWHL and constitute an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

23.     Defendant JPMorgan Chase & Co. has sufficient contacts with and control over Defendant JPMorgan Chase Bank, N.A. to be a joint employer of Plaintiffs and the class and collective action members and through JPMorgan Chase Bank, N.A. derives profits with respect to its banking practices that have led to the damages suffered by Plaintiffs.

24.     Upon information and belief, Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. jointly maintain the employment records, pay records and time records of Plaintiffs and the class and collective action members.

25.     Upon information and belief, Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. jointly control the work environment and work schedules of Plaintiffs and the class and collective action members.

26.     Upon information and belief, Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. both have the authority to hire and fire Plaintiffs and the class and collective action members.

27.     Upon information and belief, Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. jointly determined the rate of pay, FLSA classification and method of pay with respect to Plaintiffs and the class and collective action members.

28.     Upon information and belief, the work performed by Plaintiffs and the class and collective action members is integral to the overall business operations of both Defendants

JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

29.     Upon information and belief, Defendant JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. jointly operate various retail banking facilities, including those where Plaintiffs worked.

30.     All banking branches owned by Defendant JPMorgan Chase & Co. were operated together as a single business enterprise.

31.     Defendant JPMorgan Chase & Co. defines itself as one of the largest financial institutions in the United States.

32.     Upon information and belief, Defendant JPMorgan Chase & Co. is the parent corporation of Defendant JPMorgan Chase Bank, N.A.

33.     Upon information and belief, Defendant JPMorgan Chase Bank, N.A. is a wholly-owned subsidiary of Defendant JPMorgan Chase & Co.

34.     Upon information and belief, Plaintiffs were subject to employee handbooks that were provided to all employees of Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., as well as the employees of the other wholly-owned subsidiaries of JPMorgan Chase & Co. Such handbooks contain "Company" polies for Chase with respect to timekeeping, pay days, pay deductions, work hours, meal periods, FLSA classification of employees, pay practices, and overtime policies, among others.

35.     Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. maintain a joint website: www.jpmorganchase.com.

## THE FLSA COLLECTION ACTION

36.     The FLSA collective action is divided into various sub-classes, which are each defined as follows:

- <u>Relationship Manager Class</u>:  A collective action under section 216(b) of the FLSA consisting of all full-time Relationship Managers who worked at a Chase banking facility and who, during the three years preceding the filing of this suit through the date of disposition, were misclassified as exempt and worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours.

- <u>Assistant Branch Manager Class</u>:  A collective action under section 216(b) of the FLSA consisting of all full-time Assistant Branch Managers who worked at a Chase banking facility and who, during the three years preceding the filing of this suit through the date of disposition, were misclassified as exempt and worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours.

- <u>Loan Officer Class</u>:  A collective action under section 216(b) of the FLSA consisting of all full-time, non-exempt Loan Officers who worked at a Chase banking facility who, during the three years preceding the filing of this suit through the date of disposition, worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours.

- <u>Private Client Banker Class</u>:  A collective action under section 216(b) of the FLSA consisting of all full-time, non-exempt Private Client Bankers who worked at a Chase banking facility who, during the three years preceding the filing of this suit through the date of disposition, worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours.

- <u>Lead Teller Class</u>:  A collective action under section 216(b) of the FLSA consisting of all full-time, non-exempt Lead Tellers who worked at a Chase banking facility who, during the three years preceding the filing of this suit through the date of disposition, worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours.

37.     Plaintiff Switzer is the class representative for the Relationship Manager Class.

38.     Plaintiff Henry is the class representative for the Assistant Branch Manager Class.

39.     Plaintiffs Guillory, Moore, Sari and Kilgishov are class representatives for the Loan Officer Class.

40.     Plaintiff Martinez is the class representative for the Private Client Banker Class.

41.     Plaintiff Henry is the class representative for the Lead Teller Class.

42.     Relationship Manager and Assistant Branch Manager are job positions that have been misclassified by Chase as "exempt" under federal and state wage and hour laws.

43.     Loan Officer, Private Client Banker, and Lead Teller are job positions that are classified by Chase as "non-exempt" under federal and state wage and hour laws.

## THE NEW JERSEY CLASS

44.     The New Jersey Class action, brought pursuant to Federal Rule of Civil Procedure 23, is defined as:

> All full-time, non-exempt employees who worked at a Chase banking facility in New Jersey and who, during the relevant time period, worked in excess of 40 hours in any workweek without receiving time and one-half their regular rate of pay for all hours worked in excess of 40 hours in the week.

45.     Plaintiffs Sari and Kilgishov are the class representatives for the New Jersey Class.

46.     Plaintiffs reserve the right to divide the New Jersey Class into sub-classes as may be appropriate or necessary.

## GENERAL FACTUAL BACKGROUND

47.     JPMorgan Chase & Co. is one of the oldest financial institutions in the United States.  It is a leading global financial services firm with assets of $2.4 trillion, and more than 5,000 bank branches nationwide.

48.     JPMorgan Chase Bank, N.A. is a United States bank and a wholly-owned subsidiary of JPMorgan Chase & Co.

49.     Chase has over 100,000 employees nationwide and is a leader in investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management, and private equity.

50.     Upon information and belief, during the three years preceding the filing of this

lawsuit, Chase has employed more than 5,000 Relationship Managers nationwide. Since September 5, 2011, Chase has classified the Relationship Manager position as exempt.

51.     Upon information and belief, during the three years preceding the filing of this lawsuit, Chase has employed more than 5,000 Assistant Branch Managers nationwide. Since September 5, 2011, Chase has classified the Assistant Branch Manager position as exempt.

52.     Upon information and belief, during the three years preceding the filing of this lawsuit, Chase has employed more than 5,000 Loan Officers nationwide. Since September 5, 2011, Chase has classified the Loan Officer position as non-exempt.

53.     Upon information and belief, during the three years preceding the filing of this lawsuit, Chase has employed more than 5,000 Private Client Bankers nationwide. Since September 5, 2011, Chase has classified the Private Client Banker position as non-exempt.

54.     Upon information and belief, during the three years preceding the filing of this lawsuit, Chase has employed more than 5,000 Lead Tellers nationwide. Since September 5, 2011, Chase has classified the Lead Teller position as non-exempt.

55.     Upon information and belief, during the three years preceding the filing of this lawsuit, Chase has employed more than 1,000 non-exempt employees in New Jersey.

56.     At all times relevant to this action, Defendants have been subject to the requirements of the FLSA and NJWHL.

57.     Plaintiffs all worked at Chase banking facilities.

58.     Chase is a repeat offender with respect to wage and hour violations under both federal and state laws, and has been sued repeatedly for such violations by other Chase employees.

59.     All of the work of Plaintiffs and the class and collective action members described herein was performed at the request and direction of, and with the full knowledge of Chase.

Therefore, Plaintiffs and the class and collective action members were suffered or permitted to work hours in excess of 40 hours in a given workweek for which he/she was not paid all overtime compensation owed.

## FLSA COLLECTIVE ACTION ALLEGATIONS

60.     Other employees have been victimized by the pattern, practice, and policy of Defendants that is in violation of the FLSA. Plaintiffs are aware that the illegal practices and policies of Defendants have been imposed on other similarly situated workers and seek to send notice to such other aggrieved employees to give them an opportunity to join this action. Plaintiffs request that Defendants provide the name, address, phone number, job title, and dates of employment for all members of the FLSA collective action, including any sub-classes, so that notice may promptly issue to these similarly situated employees.

### *Misclassification of Relationship Manager Position*

61.     Relationship Managers at Chase perform essentially the same job duties as the now-defunct "Business Banker" position.

62.     In 2011, Chase was sued under the FLSA for misclassifying the Business Banker position as "exempt." In response to the nationwide FLSA lawsuit brought by Business Bankers, Chase ceased to have the job position known as "Business Banker." In October 2014, Chase settled the lawsuit.

63.     In or around late 2012, Chase created a new job position known as "Relationship Manager." Chase designated the Relationship Manager position as exempt under federal and state law.

64.     Chase misclassified the Relationship Manager position as exempt in a deliberate attempt to avoid paying overtime compensation to these employees.

65.     Relationship Managers are the primary salesforce selling Chase's financial products and services to business customers in Chase bank branches and other retail banking facilities.

66.     Relationship Managers exercise little, or no, independent judgment and discretion with respect to matters of significance.

67.     Relationship Managers are closely supervised by more senior Chase employees.

68.     Relationship Managers do not customarily and regularly direct the work of at least two or more other full-time employees.

69.     Relationship Managers do not have the authority to hire or fire other employees, nor are their suggestions with regard to hiring, firing, or promoting other employees given any significant weight.

70.     With respect to Relationship Managers, Chase uses the same or very similar job description, job qualifications, operating policies, human resources policies and job functions at all Chase banking facilities nationwide.

71.     Relationship Managers are paid on a salary plus bonus/commission basis pursuant to uniform policies, procedures and practices nationwide.

72.     Plaintiff Ryan Switzer worked as a Relationship Manager from approximately early 2013 through January 2014.

73.     Relationship Managers, including Plaintiff Switzer, were not paid time and one-half their regular rate of pay for all hours worked in excess of 40 hours per workweek. Rather, Relationship Managers were paid the same salary irrespective of the number of hours they worked each week.

74.     Plaintiff Switzer, and similarly situated Relationship Managers, worked well in

excess of 40 hours per workweek without receiving any overtime compensation.

75. Relationship Managers, including Plaintiff Switzer, were never paid any overtime compensation by Chase.

76. Plaintiff Switzer, and those similarly situated, were required to work during their lunch breaks most work days.

77. Chase failed to maintain any time records for its Relationship Managers, including Plaintiff Switzer.

78. Defendants knew or showed reckless disregard for the fact that the pay scheme with respect to Relationship Managers, including Plaintiff Switzer, is in fact illegal.

79. Defendants' violations of the FLSA as described herein are willful violations of the FLSA.

80. Chase's business operations, and the job duties, working conditions, wages and compensation of Plaintiff Switzer and all other Relationship Managers are substantially similar, if not identical, at all of Chase's locations throughout the country.

81. Other employees have been victimized by this pattern, practice, and policy of Chase that is in violation of the FLSA. Plaintiff Switzer is aware that the illegal practices and policies of Defendants have been imposed on other workers.

82. Plaintiff Switzer and the members of Relationship Manager Class are similarly situated in that they have substantially similar job requirements and duties and pay provisions and were/are subject to Chase's common practice, policy or plan of unlawfully misclassifying all Relationship Managers and refusing to pay them overtime and/or minimum wages in violation of the FLSA.

83. The claims for violations of the FLSA may be brought and maintained as an "opt-

in" collective action because Plaintiff Switzer and the other Chase Relationship Managers are "similarly situated."

84.    Plaintiff Switzer will fairly and adequately represent and protect the interests of those who are similarly situated.

### *Misclassification of Assistant Branch Manager Position*

85.    The Assistant Branch Manager position at Chase is a low-level position that requires no college degree and primarily involves bank teller and customer service tasks.

86.    Chase has classified the Assistant Branch Manager position as exempt under federal and state law.

87.    Chase misclassified the Assistant Branch Manager position as exempt in a deliberate attempt to avoid paying overtime compensation to these employees.

88.    The primary job duties of Assistant Branch Managers do not fall within any FLSA exemption. The primary job duty of the Assistant Branch Managers is to perform non-exempt tasks, including teller and general customer service functions in the branch, such as assisting customers in teller lines, greeting customers and opening new accounts. These are the same job functions assigned to non-exempt Chase employees.

89.    Assistant Branch Managers exercise little, or no, independent judgment and discretion with respect to matters of significance.

90.    Assistant Branch Managers are closely supervised by more senior Chase employees.

91.    Assistant Branch Managers do not customarily and regularly direct the work of at least two or more other full-time employees.

92.    Assistant Branch Managers do not have the authority to hire or fire other

employees, nor are their suggestions with regard to hiring, firing, or promoting other employees given any significant weight.

93. With respect to Assistant Branch Managers, Chase uses the same or very similar job description, job qualifications, operating policies, human resources policies and job functions at all Chase banking facilities nationwide.

94. Assistant Branch Managers are paid on a salary basis pursuant to uniform policies, procedures and practices.

95. Plaintiff Ron Henry worked as an Assistant Branch Manager from approximately 2012 through 2013.

96. Assistant Branch Managers, including Plaintiff Henry, were not paid time and one-half their regular rate of pay for all hours worked in excess of 40 hours per workweek. Rather, Assistant Branch Managers were paid the same salary irrespective of the number of hours they worked each week.

97. Plaintiff Henry, and similarly situated Assistant Branch Managers, worked well in excess of 40 hours per workweek without receiving any overtime compensation.

98. Assistant Branch Managers, including Plaintiff Henry, were never paid any overtime compensation by Chase.

99. Plaintiff Henry, and those similarly situated, were required to work during their lunch breaks most work days.

100. Chase failed to maintain any time records for its Assistant Branch Managers, including Plaintiff Henry.

101. Defendants knew or showed reckless disregard for the fact that the pay scheme with respect to Assistant Branch Managers, including Plaintiff Henry, is in fact illegal.

102.    Defendants' violations of the FLSA as described herein are willful violations of the FLSA.

103.    Chase's business operations, and the job duties, working conditions, wages and compensation of Plaintiff Henry and all other Assistant Branch Managers are substantially similar, if not identical, at all of Chase's locations throughout the country.

104.    Other employees have been victimized by this pattern, practice, and policy of Chase that is in violation of the FLSA. Plaintiff Henry is aware that the illegal practices and policies of Defendants have been imposed on other workers.

105.    Plaintiff Henry and the members of Assistant Branch Manager Class are similarly situated in that they have substantially similar job requirements and duties and pay provisions and were/are subject to Chase's common practice, policy or plan of unlawfully misclassifying all Assistant Branch Managers and refusing to pay them overtime and/or minimum wages in violation of the FLSA.

106.    The claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action because Plaintiff Henry and the members of Assistant Branch Manager Class are "similarly situated."

107.    Plaintiff Henry will fairly and adequately represent and protect the interests of those who are similarly situated.

### Off-the-Clock Work for Non-Exempt Loan Officers, Private Client Bankers, and Lead Tellers

108.    Chase promulgated compensation policies and practices that uniformly violate the wage and hour rights of a collective group of similarly situated non-exempt Loan Officers, Private Client Bankers, and Lead Tellers, by requiring them to perform integral and indispensable job activities without compensation, also known as "off-the-clock" work.

109.     Like other Loan Officers at Chase nationwide, Plaintiffs Guillory, Moore, Sari and Kilgishov were non-exempt Loan Officers at Chase during the relevant time period who were entitled to, but did not receive, all overtime wages for all hours that they worked in excess of 40 hours in a workweek.

110.     With respect to Loan Officers, Chase uses the same or very similar job description, job qualifications, operating policies, human resources policies, job functions and pay practices at all Chase banking facilities nationwide.

111.     Chase Loan Officers are non-exempt employees who are paid on an hourly basis pursuant to uniform policies, procedures and practices nationwide.

112.     Chase's business operations, and the job duties, working conditions, wages and compensation of Plaintiffs Guillory, Moore, Sari and Kilgishov and all other Loan Officers are substantially similar, if not identical, at all of Chase's locations throughout the country.

113.     Like the other Private Client Bankers at Chase nationwide, Plaintiff Martinez was a non-exempt Private Client Banker at Chase during the relevant time period who was entitled to, but did not receive, all overtime wages for all hours that he worked in excess of 40 hours in a workweek.

114.     With respect to Private Client Bankers, Chase uses the same or very similar job description, job qualifications, operating policies, human resources policies, job functions and pay practices at all Chase banking facilities nationwide.

115.     Chase Private Client Bankers are non-exempt employees who are paid on an hourly basis pursuant to uniform policies, procedures and practices nationwide.

116.     Chase's business operations, and the job duties, working conditions, wages and compensation of Plaintiff Martinez and all other Private Client Bankers are substantially similar,

if not identical, at all of Chase's locations throughout the country.

117.    Like the other Lead Tellers at Chase nationwide, Plaintiff Henry was a non-exempt Lead Teller at Chase during the relevant time period who was entitled to, but did not receive, all overtime wages for all hours that he worked in excess of 40 hours in a workweek.

118.    With respect to Lead Tellers, Chase uses the same or very similar job description, job qualifications, operating policies, human resources policies, job functions and pay practices at all Chase banking facilities nationwide.

119.    Chase Lead Tellers are non-exempt employees who are paid on an hourly basis pursuant to uniform policies, procedures and practices nationwide.

120.    Chase's business operations, and the job duties, working conditions, wages and compensation of Plaintiff Henry and all other Lead Tellers are substantially similar, if not identical, at all of Chase's locations throughout the country.

121.    Plaintiffs Henry, Martinez, Guillory, Moore, Sari and Kilgishov, as well as similarly situated Loan Officers, Private Client Bankers, and Lead Tellers, often worked through all or a portion of their uncompensated meal breaks and rest breaks in order to accommodate the branch or banking facility traffic and assist customers coming into the bank during lunch time; to handle heavy customer call volume at the bank; and to complete other work-related tasks.  The time that they spent working during such breaks was unpaid.

122.    Chase required its non-exempt employees to record time for an uncompensated "meal break" each day, including Loan Officers, Private Client Bankers, and Lead Tellers, irrespective of whether they actually took a meal break.

123.    Chase routinely required its non-exempt employees, including Loan Officers, Private Client Bankers, and Lead Tellers, to work well in excess of 40 hours per workweek without

overtime compensation for all hours worked in excess of 40 hours.

124.    Like other non-exempt employees, including Loan Officers, Private Client Bankers, and Lead Tellers, Plaintiffs Henry, Martinez, Guillory, Moore, Sari and Kilgishov were often required to perform work outside their scheduled shifts for which they were not compensated.

125.    Chase implemented a policy or practice with respect to non-exempt employees, including Plaintiffs Henry, Martinez, Guillory, Moore, Sari and Kilgishov, (as well as similarly situated Loan Officers, Private Client Bankers, and Lead Tellers), as follows: (i) they generally were only paid for their scheduled shift time; (ii) they were not paid for work they performed before their scheduled shift began and after the end of their scheduled shift; (iii) they were required to open the branch and close the branch, and they were not paid for this time when it was not included in their schedule, which was most of the time; (iv) they were required to work during their uncompensated meal break and rest break; and (v) they were required to work hours beyond their scheduled shift and they were not compensated for such time.

126.    During the relevant time period, Plaintiffs Henry, Martinez, Moore, Guillory, Sari and Kilgishov, and those similarly situated were subject to Defendants' nationwide payroll and timekeeping systems and policies.

127.    Chase classified Plaintiffs Henry, Martinez, Moore, Guillory, Sari, and Kilgishov as non-exempt employees that were entitled to be paid minimum wages and overtime pay for all hours worked in excess of 40 hours per workweek.

128.    The claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action because the members of the FLSA collective action are similarly situated.

129.    Plaintiffs Henry, Martinez, Moore, Guillory, Sari, and Kilgishov will fairly represent and protect the interests of those who are similarly situated.

130.     Plaintiffs Sari and Kilgishov are the class representatives for the New Jersey Class.

131.     During the requisite statutory period under New Jersey law, Plaintiffs Sari and Kilgishov and members of the New Jersey Class worked in excess of 40 hours per workweek without receiving overtime compensation at time and one-half their regular rate of pay for all hours over 40 in a week and/or without receiving the minimum wage.

132.     Plaintiffs Sari and Kilgishov bring New Jersey state law claims individually and on behalf of a class of all non-exempt employees who were, are or will be employed by Chase in the State of New Jersey during the relevant time period, and who worked without received all overtime compensation and/or minimum wages owed.

133.     Plaintiffs Sari and Kilgishov bring these claims for relief for violation of NJWHL as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

134.     *Numerosity*.  The New Jersey Class members are so numerous that joinder of all members is impracticable.  Upon information and belief, Chase has employed more than 1,000 persons who meet the definition of the New Jersey Class.  The number and identity of the proposed New Jersey Class are readily ascertainable through inspection of Chase's records.

135.     *Commonality*.  Common questions of law and fact exist as to members of the New Jersey Class, including but not limited to the following: (a) whether Chase failed to pay its non-exempt employees in New Jersey the minimum wage for all hours worked; (b) whether Chase failed to pay its non-exempt employees in New Jersey overtime wages for all hours worked in excess of 40 hours in a workweek; and (c) whether Wells Fargo violated New Jersey law by failing to pay such wages.

136.     *Typicality*.  The claims of Plaintiffs Sari and Kilgishov are typical of the New Jersey

Class Members' claims.  Plaintiffs Sari and Kilgishov, like the other members of the New Jersey Class, were subject to Chase's policy and practice of not properly paying its non-exempt New Jersey employees minimum wages and overtime wages in violation of New Jersey state laws.

137.    *Predominance*.  Questions of fact and law common to the New Jersey Class Members predominate over any questions affecting only individual members.  Chase's failure to pay its non-exempt employees the minimum wage and overtime wages for all hours worked in excess of 40 hours in a workweek as required by New Jersey state law results from generally applicable policies or practices and does not depend on the personal circumstances of class members.  Thus, the experiences of Plaintiffs Sari and Kilgishov are typical of the experiences of the New Jersey Class because they are non-exempt employees of Chase in New Jersey who sustained damages including non-payment of overtime wages as a result of Chase's common policies and practices.

138.    *Adequacy of Representation*.  Plaintiffs Sari and Kilgishov will fairly and adequately protect the interests of the New Jersey Class and have retained counsel experienced in pursuing complex employment matters and class action/multi-party litigation who will adequately, competently and vigorously represent the interests of the New Jersey Class.  The claims of Plaintiffs Sari and Kilgishov are not adverse to or in conflict with the claims of the New Jersey Class.

139.    *Superiority*.  Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein.  Treating this as a class action will permit a large number of persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expenses that numerous individual actions would entail.

## ALLEGATIONS RELATING TO
## PLAINTIFFS' INDIVIDUAL CLAIMS AND CLASS CLAIMS

140.     Plaintiffs are all former employees of Defendants who worked in a Chase banking facility.

141.     During the relevant time period, Plaintiffs Henry and Switzer were misclassified as "exempt" employees by Chase and were denied overtime compensation.

142.     During the relevant time period, Plaintiffs Guillory, Henry, Kilgishov, Martinez, Moore, and Sari, were classified as non-exempt Chase employees and were required to perform "off-the-clock" work for which they were not compensated.  Generally, Plaintiffs spent time performing work before their scheduled shift, during uncompensated meals periods and rest breaks, after their scheduled shift, and on weekends for which they were not compensated.

143.     Most workweeks, during the applicable federal and state statutory periods, Plaintiffs worked well over 40 hours each workweek, but were not paid the minimum wage and/or overtime compensation for all overtime hours worked.  As to each Plaintiff and their respective job position specifically (in alphabetical order):

*Plaintiff Clayton Guillory (Loan Officer)*

144.     Mr. Guillory was employed by Chase from approximately November 3, 2010 through April 17, 2012.   During his employment at Chase, Mr. Guillory held the non-exempt position of Loan Officer.

145.     Mr. Guillory worked for Chase at three different bank branches owned and operated by Defendants in the State of Texas, including branches in Richmond, Sugar Land and Katy.

146.     As a Loan Officer, Mr. Guillory was largely responsible for originating mortgage loans with respect to Chase customers who came into the bank branch.

147.     Mr. Guillory typically worked 6 days a week, Monday through Saturday.

148. Mr. Guillory's lunch break was interrupted virtually each work day to handle customer service issues in the branch, including but not limited to handling customer calls, walk-ins, and referrals. Chase policy and procedure required its retail bank employees, including Mr. Guillory, to interrupt his lunch break and service the customers' needs. Nonetheless, he was required to record an uncompensated lunch break and was not compensated for the time he spent working during his uncompensated break.

149. After leaving the bank branch once the branch closed to the public, Mr. Guillory typically spent additional hours working on mortgage files and answering customer questions and concerns by telephone. Like the other Loan Officers, Chase assigned Mr. Guillory a laptop to use for his work as a Loan Officer, and Chase required that Mr. Guillory use and distribute his cell phone number to Chase customers so that the customers could always reach the Loan Officer regarding their mortgage loan. Thus, Chase customers constantly contacted Mr. Guillory by phone at all hours regardless of whether or not Mr. Guillory was physically at the Chase bank branch. Furthermore, due to the volume of mortgage files Mr. Guillory was responsible for at any given time, he was required to work on the files after he left the bank branch in order to ensure an efficient process time for the loan as required by Chase policy and procedure. Chase was aware of the large volume of mortgage loans assigned to Mr. Guillory, that Mr. Guillory would use his Chase laptop and cell phone to work on the files after leaving the branch, and that the volume of work assigned to Mr. Guillory required that he work well in excess of 40 hours per workweek.

150. Additionally, like other Loan Officers, on the weekends, Mr. Guillory was required to spend several hours marketing Chase by engaging in activities such as open houses, workshops, and realtor events, among others.

151.     In summary, during almost all workweeks within the relevant period, Mr. Guillory worked in excess of 40 hours a week, but was not compensated for all hours worked in excess of 40 hours in a workweek.

**Plaintiff Ron Henry (Lead Teller & Assistant Branch Manager)**

152.     Mr. Henry was employed by Chase from approximately September 23, 2009 through March 22, 2013. During the relevant time period, he held two positions at Chase: Lead Teller and Assistant Branch Manager. Mr. Henry worked as a Lead Teller from late 2010 until mid-2012 at which time Mr. Henry became an Assistant Branch Manager. Mr. Henry held the position of Assistant Branch Manager until he left the company on or about March 22, 2013. As a Lead Teller Mr. Henry was classified as non-exempt, and as an Assistant Branch Manager, Chase classified Mr. Henry as an exempt employee.

153.     Mr. Henry worked for Chase at two different bank branches in Texas, including branches in Missouri City and Sugar Land.

154.     As a Lead Teller, Mr. Henry was responsible for processing all monetary transactions for his respective Chase bank branch facility. Mr. Henry would process transactions for customers in the drive-thru, the teller line located inside the bank branch, and for customers within the branch who were being assisted by personal bankers. As a Lead Teller, Mr. Henry was charged with additional duties compared to the responsibilities of other tellers which included but were not limited to responsibility for the bank vault, ensuring that the other tellers' cash drawers balanced, ordering money for the branch, and possessing the authority to override other tellers' transactions when necessary.

155.     As a Lead Teller, Mr. Henry typically worked 6 days a week—Monday through Saturday.

156.     Prior to the branch opening to the public, as a Lead Teller Mr. Henry was required by Chase to perform a dual control opening procedure with another Chase employee following procedures and protocols mandated by Chase.  The opening procedure consisted of performing a security check outside of the branch, opening the bank, and then performing a security check inside the branch.  Following the opening of the branch, Mr. Henry typically attended a mandatory morning huddle that was led by the branch manager.

157.     After the branch closed to the public, as a Lead Teller, Mr. Henry was required to perform closing procedures after the branch closed its doors which included but were not limited to: (1) counting his cash drawer; (2) ensuring that all client information and transaction history was secure and not in plain view; (3) ensuring that all his logs were properly filled out for the day; (4) scanning all documents to his computer; (5) performing security checks inside and outside of the branch; and (6) locking the bank branch.

158.     As a Lead Teller, Mr. Henry was frequently interrupted during his lunch break to return to work to service customer needs in the branch, and Mr. Henry almost never received a lunch break at all on Saturdays.  Mr. Henry's lunch was interrupted largely to handle the heavy customer traffic at the bank branch.  Chase policy and procedures required that customers in the branch be serviced promptly, which required Mr. Henry to interrupt his lunch break or be denied a lunch break altogether in order to service the customers' needs.  Nonetheless, Mr. Henry was required to record an uncompensated lunch break and was not compensated for the time he spent working during his lunch.

159.     In summary, as a Lead Teller, during almost all workweeks within the relevant period, Mr. Henry worked in excess of 40 hours a workweek, but was not paid overtime wages for all hours worked in excess of 40 hours.

160.     As an Assistant Branch Manager, Mr. Henry's primary job duties involved opening and closing the branch and performing other bank teller duties including customer service and balancing cash drawers, and assisting customers who came into the branch with their banking needs.

161.     Mr. Henry typically worked 6 days a week, Monday through Saturday, as an Assistant Branch Manager.

162.     As an Assistant Branch Manager, Mr. Henry typically was required to work during his lunch break in order to assist customers in the branch.

163.     In summary, as an Assistant Branch Manager, during almost all workweeks within the relevant period, Mr. Henry worked in excess of 40 hours a workweek, but was not paid any overtime wages. Mr. Henry was misclassified as an exempt employee when he was an Assistant Branch Manager.

### Plaintiff Yuriy Kilgishov (*Loan Officer*)

164.     Mr. Kilgishov was employed by Chase from approximately February 2013 until December 2013 as a non-exempt Loan Officer. Mr. Kilgishov worked for Chase at bank branches owned and operated by Defendants in New Jersey.

165.     As a Loan Officer, Mr. Kilgishov was largely responsible for originating mortgage loans with respect to Chase customers who came into the bank branch.

166.     Mr. Kilgishov typically worked 5 to 7 days a week, and often worked in excess of 10 hours per day.

167.     Mr. Kilgishov's lunch break was frequently interrupted to handle customer service issues in the branch including but not limited to customer calls, walk-ins, and referrals. Chase policy and procedure required Mr. Kilgishov to interrupt his lunch break and service the

customers' needs. Nonetheless, he was required to record an uncompensated lunch break and was not compensated for the time he spent working during his lunch.

168. One day out of the week, Mr. Kilgishov was required to remain at the branch after the branch closed to the public for a mandatory call night. On the other week nights, Monday through Friday, when no call night was held, after leaving the bank branch Mr. Kilgishov typically spent additional hours working on mortgage files and answering customer questions and concerns by telephone. Like the other Loan Officers, Chase assigned Mr. Kilgishov a laptop to use for his work as a Loan Officer, and Chase required that Mr. Kilgishov use and distribute his cell phone number to Chase customers. Thus, Chase customers constantly contacted Mr. Kilgishov by phone at all hours regardless of whether or not Mr. Kilgishov was physically at the Chase bank branch. Furthermore, due to the volume of mortgage files assigned by Chase to Mr. Kilgishov at any given time, he was required to work on the files after he left the bank branch in order to ensure an efficient process time for the loan as required by Chase. Chase was aware of the number of mortgage loans Mr. Kilgishov was responsible for, that Mr. Kilgishov would use his Chase laptop to work on the files outside of the branch, and that the volume of work assigned to Mr. Kilgishov required that he work more than 40 hours per work week.

169. Additionally, like other Loan Officers, on the weekends, Mr. Kilgishov was required to spend several hours marketing Chase by engaging in activities such as open houses, workshops, and realtor events, among others.

170. In summary, as a Loan Officer, during almost all workweeks within the relevant period, Mr. Kilgishov worked in excess of 40 hours a workweek, but was not paid overtime wages for all hours worked in excess of 40 hours.

***Plaintiff Jose Omar Martinez (Private Client Banker)***

171.     Mr. Martinez was employed by Chase from approximately June 2, 2008 through August 31, 2012.  During the relevant time period, Mr. Martinez held the non-exempt position of Private Client Banker.  Mr. Martinez worked for Chase in bank branches located in San Antonio, Texas and Houston, Texas.

172.     As a Private Client Banker, Mr. Martinez was responsible for managing a portfolio of approximately 200 clients who held a minimum of $500,000 or more of investable assets.  Mr. Martinez was expected to grow his assigned portfolio of business by bringing funds held outside of the bank into a Chase investment managed account.

173.     Mr. Martinez typically worked 6 days a week, Monday through Saturday.

174.     Mr. Martinez was interrupted during his lunch break almost every work day (Monday through Friday), and Mr. Martinez almost never received any lunch break on Saturdays. Mr. Martinez's lunch was interrupted to service customers at the bank branch.  Like the other Private Client Bankers, Chase policy and procedure required Mr. Martinez to interrupt his lunch break and service the customers' needs.  Nonetheless, he was required to record an uncompensated lunch break, and he was not paid for the time that he spent working during his uncompensated break.

175.     In summary, as a Private Client Banker, during almost all workweeks within the relevant period, Mr. Martinez worked in excess of 40 hours a workweek, but was not paid overtime wages for all hours worked in excess of 40 hours.

*Plaintiff Anita Marie Moore (Loan Officer)*

176.    Ms. Moore was employed by Chase from approximately August 2011 through January 2013 as a non-exempt Loan Officer.  Ms. Moore worked for Chase at bank branches owned and operated by Defendants in Texas.

177.    As a Loan Officer, Ms. Moore was largely responsible for originating mortgage loans with respect to Chase customers who came into the bank branch.

178.    Ms. Moore typically worked 6 days a week, Monday through Saturday.

179.    Ms. Moore's lunch break was interrupted virtually each day to handle customer service issues in the branch including but not limited to customer calls, walk-ins, and referrals. Chase policy and procedure required Ms. Moore to interrupt her lunch break and service the customers' needs.  Nonetheless, she was required to record an uncompensated lunch break and was not compensated for the time she spent working during her uncompensated break.

180.    Additionally, even when not working at the branch, Ms. Moore spent hours working on mortgage files and answering customers' questions and concerns by telephone.  Like other Loan Officers, Chase assigned Ms. Moore a laptop to use for her work as a Loan Officer, and Chase required that Ms. Moore use and distribute her cell phone number to Chase customers.  Ms. Moore spent additional hours working on mortgage files and answering customers' questions and concerns by telephone after leaving the branch.  Chase customers constantly contacted Ms. Moore by phone at all hours regardless of whether or not Ms. Moore was physically at the Chase bank branch.  Due to the volume of mortgage files Ms. Moore was responsible for at any given time, she was required to work on the files after she left the bank branch in order to ensure an efficient process time for the loan as required by Chase.  Chase was aware of the number of mortgage loans Ms. Moore was responsible for, that Ms. Moore would use her Chase laptop to work on the files

outside of branch hours, and that the volume of work assigned to Ms. Moore required that she work more than 40 hours per workweek.

181.     Additionally, like other Loan Officers, on the weekends, Ms. Moore was required to spend several hours working, including but not limited to, marketing Chase.

182.     In summary, as a Loan Officer, during almost all workweeks within the relevant period, Ms. Moore worked in excess of 40 hours a workweek, but was not paid overtime wages for all hours worked in excess of 40 hours.

**Plaintiff Joseph Sari (Loan Officer)**

183.     Mr. Sari was employed by Chase from approximately January 2013 through January 2014 as a non-exempt Loan Officer.  Mr. Sari worked for Chase at bank branches owned and operated by Defendants in New Jersey.

184.     As a Loan Officer, Mr. Sari was largely responsible for originating mortgage loans with respect to Chase customers who came into the bank branch.

185.     Mr. Sari typically worked 7 days a week.

186.     Mr. Sari's lunch break was interrupted virtually each day to handle customer service issues in the branch including but not limited to customer calls, walk-ins, and referrals. Chase policy and procedure required Mr. Sari to interrupt his lunch break and service the customers' needs.  Nonetheless, he was required to record an uncompensated lunch break and was not compensated for the time he spent working during his uncompensated break.

187.     One day out of the week, Mr. Sari was required to remain at the branch after the branch closed to the public for a mandatory call night.  On the other week nights, Monday through Friday, when no call night was held at the branch, after leaving the bank branch, Mr. Sari typically spent additional hours working on mortgage files and answering customer questions and concerns

by telephone. Like other Loan Officers, Chase assigned Mr. Sari a laptop to use for his work as a loan officer, and Chase required that Mr. Sari use and distribute his cell phone number to Chase customers. Thus, Chase customers constantly contacted Mr. Sari by phone at all hours regardless of whether or not Mr. Sari was physically at the Chase bank branch. Like other Loan Officers, due to the volume of mortgage files Mr. Sari was responsible for at any given time, he was required to work on the files after he left the bank branch in order to ensure an efficient process time for the loan as required by Chase. Chase was aware of the heavy volume of mortgage loans Mr. Sari was responsible for, that Mr. Sari would use his Chase laptop and cell phone to work on the files outside of branch hours, and that the volume of work assigned to Mr. Sari required that he work more than 40 hours per workweek. In addition, Mr. Sari also worked on Saturday and Sunday evenings working on mortgage files and answering customer questions and concerns by telephone.

188. Additionally, like other Loan Officers, on the weekends, Mr. Sari was required to spend several hours marketing Chase by engaging in activities such as open houses, workshops, and realtor events, among others.

189. In summary, as a Loan Officer, during almost all workweeks within the relevant period, Mr. Sari worked in excess of 40 hours a workweek, but was not paid overtime wages for all hours worked in excess of 40 hours.

*Plaintiff Ryan Switzer (Relationship Manager)*

190. Mr. Switzer was employed by Chase from approximately July 2010 through January 2014. Mr. Switzer worked in a Chase branch located in Houston, Texas. Mr. Switzer held the job title of Business Banker until Chase ceased to use the job title. Mr. Switzer's job title then became Relationship Manager, although his responsibilities remained largely unchanged. As

both a Business Banker and Relationship Manager, Mr. Switzer was misclassified by Chase as an exempt employee.

191.     As a Relationship Manager for Chase, Mr. Switzer was responsible for selling Chase's financial products and services to business customers in the bank branch. Mr. Switzer conducted his day-to-day operations as a Relationship Manager from a Chase branch. Chase assigned to Mr. Switzer a portfolio of customers with whom he proactively met face-to-face in the branch and over the phone to assist with their financial needs.

192.     Mr. Switzer typically worked 6 days a week, Monday through Saturday, as a Relationship Manager.

193.     As a Relationship Manager, Mr. Switzer typically was required to work during his uncompensated lunch break in order to assist customers in the branch.

194.     In summary, as a Relationship Manager, during almost all workweeks within the relevant period, Mr. Switzer worked in excess of 40 hours a workweek, but was not paid any overtime wages. Mr. Switzer was misclassified as an exempt employee when he was a Relationship Manager.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### FLSA Overtime and Minimum Wage Violations, 29 U.S.C. § 207
### (All Plaintiffs, Individually, and as FLSA Collective Action)

195.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

196.     At all relevant times, Defendants have been and continue to be an "employer" of Plaintiffs and the collective action members, and Chase has been engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

197.    Plaintiffs have signed consent forms in this action pursuant to 29 U.S.C. §§ 216(b) and 256, and such consents have been previously filed herein.

198.    The FLSA requires that each covered employer compensate all non-exempt employees at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek and to pay the minimum wage for all hours worked.

199.    Plaintiffs and the FLSA collective action members are entitled to be paid the minimum wage for all hours worked.

200.    Plaintiffs and the FLSA collective action members are entitled to be paid overtime compensation for all overtime hours worked.

201.    Plaintiffs and the FLSA collection action members have been denied minimum wages and/or overtime wages in violation of the FLSA.

202.    Plaintiffs and the FLSA collective action members have worked in excess of 40 hours in a workweek without receiving all overtime compensation owed for all hours worked in excess of 40 hours.

203.    At all relevant times, pursuant to company policies, procedures, and practices, Chase failed and refused to pay minimum wages and/or overtime compensation to Plaintiffs and the collective action members in violation of the FLSA.

204.    Such conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

205.    Defendants' conduct has been willful and in bad faith.  Plaintiffs and the FLSA collective action members are entitled to liquidated damages for such conduct.

206.     In further violation of the FLSA, Defendants have failed to maintain accurate employee pay records, including the number of hours worked per work week, by Plaintiffs and the collective action members.

207.     Plaintiffs, individually and on behalf of members of the FLSA collective action (including the sub-classes identified herein), seek damages in the amount of their respective unpaid overtime compensation, unpaid minimum wages, liquidated damages as provided by the FLSA, interest, and all other compensatory, equitable and other legal relief to which they may be entitled.

208.     Plaintiffs, individually and on behalf of the members of the FLSA collective action (including the sub-classes identified herein), seek recovery of attorneys' fees, interest, expert witness fees, litigation expenses and costs to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### New Jersey Overtime and Minimum Wage Violations, N.J. Stat. 34:11-56a4
### (By Plaintiffs Sari and Kilgishov, Individually, and as New Jersey Class Action)

209.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten here.

210.     Defendants have violated N.J. Stat. 34:11-56a4 by failing to pay Plaintiffs Sari and Kilgishov and the New Jersey Class minimum wages and/or overtime compensation at a rate of one and one half times their regular rates of pay for all hours worked in excess of 40 hours per work week.

211.     Defendants have not made a good faith effort to comply with NJWHL.

212.     Defendants' conduct was willful and in bad faith.

213.     Plaintiffs Sari and Kilgishov, individually and on behalf of the New Jersey Class, seek recovery of all unpaid wages and compensation and benefits, liquidated damages, pre-

judgment and post-judgment interest, attorneys' fees, litigation expenses and costs to be paid by Defendants, as well as declaratory or injunctive relief.

## PRAYER

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray to recover the following:

a. declaratory judgment;

b. damages and restitution for all unpaid wages (including fringe benefits and bonuses), unpaid overtime compensation (at one and one-half times their regular rates of pay), and unpaid regular wages and minimum wages and other injuries, as provided by the FLSA and NJWHL;

c. liquidated damages;

d. all applicable penalties for the violations set forth herein;

e. an award of attorneys' fees, litigation expenses, expert fees and costs incurred in vindicating the rights of Plaintiffs and the members of the collective action and subclasses;

f. an award of pre-judgment and post-judgment interest at the highest rate permitted by law; and

f. such other and further relief, at law or in equity, as this Court deems just and appropriate.


DATED: February 20, 2015

Respectfully submitted,

WILLS LAW FIRM, PLLC

/s/ Rhonda H. Wills
Rhonda H. Wills (*Pro Hac Vice*)
Genevieve B. Estrada (*Pro Hac Vice*)
1776 Yorktown, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047


KRAKOWER DICHIARA, LLC

Michael DiChiara
One Depot Square
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-0303
Facsimile: (866) 417-2333

ATTORNEYS FOR PLAINTIFFS & MEMBERS
OF THE COLLECTIVE ACTION AND
CLASS ACTION


## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that the foregoing document has been electronically filed with the clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 20th day of February, 2015.


/s/ Rhonda H. Wills
Rhonda H. Wills