# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RON HENRY, JOSE OMAR MARTINEZ, CLAYTON GUILLORY, ANITA MARIE MOORE, RYAN SWITZER, JOSEPH SARI, and YURIY KILGISHOV, on Behalf of Themselves and All Others Similarly Situated, § § § § § § § | CIV. NO. 14-CIV-7176 (AJN) |
| PLAINTIFFS, § § | JURY TRIAL DEMANDED |
| V. § § | |
| JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., DEFENDANTS. § § § § § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER

WILLS LAW FIRM, PLLC
Rhonda H. Wills
Genevieve B. Estrada
1776 Yorktown Street, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047

KRAKOWER DICHIARA, LLC
Michael DiChiara
One Depot Square
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-0303
Facsimile: (866) 417-2333

*Attorneys for Plaintiffs, Proposed FLSA Collective Action Members and Putative Class Members*

Dated: March 20, 2015

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................... 4

   A.  *Henry v. JPMorgan,* the Matter Before This Court. ........................................... 4

   B.  The Settled *Hightower* California Action. ....................................................... 6

III.  ARGUMENT AND AUTHORITIES .................................................................... 8

   A.  The Court Should Not Dismiss or Transfer this Case Because the "First Filed" Rule is
       Inapplicable. ................................................................................................... 8

     1. The California *Hightower* case and the instant case do not involve the same issues. ........ 9

     2. The California *Hightower* case and the instant case do not involve the same parties and
        classes. ..................................................................................................... 12

     3. The balance of convenience factors favor maintaining this case in the Southern District
        of New York rather than transfer under the first-filed rule. ............................................. 16

   B.  This Action Should Not Be Transferred Pursuant to 28 U.S.C. § 1404. ........................... 16

     1. The Chase corporate headquarters is in the Southern District of New York making it the
        most convenient and appropriate venue. ....................................................................... 17

     2. Analysis of the balance of convenience factors weigh strongly against transferring this
        case to California. ....................................................................................................... 18

        a.  Plaintiffs' choice of forum. ................................................................................. 18

        b.  Convenience of the witnesses. ............................................................................ 19

        c.  Location of relevant documents. ....................................................................... 20

        d.  Convenience of the parties. ................................................................................. 20

        e.  Locus of operative facts. ................................................................................. 21

        f.  Availability of process to compel attendance of unwilling witnesses. ...................... 21

        g.  Relative means of the parties. ........................................................................... 22

        h.  Forum's familiarity with governing law. ............................................................ 22

        i.  Trial efficiency and interests of justice. ............................................................... 23

IV.  CONCLUSION .......................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Key Tronic Corp.*,
No .94 Civ. 535 (MBM), 1996 WL 474172 (S.D.N.Y. Aug. 21, 1996) .................................. 21

*Am. SS. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
474 F.Supp.2d 474 (S.D.N.Y. 2007) ...................................................................... 16

*Chemi Spa v. GlaxoSmithKline*,
No. 04-4545, 2004 U.S. Dist. LEXIS 25335 (E.D. Penn. Nov. 24, 2004) .............................. 24

*Comedy Partners v. Street Players Holding Corp.*,
34 F. Supp. 2d 194 (S.D.N.Y. 1999) ...................................................................... 23

*Early v. BJ's Wholesale Club, Inc.*,
No. 06 Civ. 3529 (WHP), 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007) ............... 18

*Farrior v. George Weston Bakeries Dist.*,
No. 08 Civ. 2705, 2009 U.S. Dist. LEXIS 2636 (E.D.N.Y. Jan. 15, 2009) ...................... 18, 23

*Fuller v. Abercrombie & Fitch Stores, Inc.*,
370 F. Supp. 2d 686 (E.D. Tenn. 2005) ............................................................... 9, 25

*Hightower, et al. v. Washington Mutual Bank, et al.*,
No. 11-cv-1802-PSG-PLAx ................................................................................. passim

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................... 20

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F.Supp.3d 385(S.D.N.Y. 2014) .......................................................................... 9

*Lihuan Wang v. Phoenix Satellite Television US, Inc.*,
No. 13 Civ. 218(PKC), 2014 U.S. Dist. LEXIS 4173 (S.D.N.Y. Jan. 13, 2014) .................... 17

*Martignago v. Merrill Lynch & Co.*,
No. 11 Civ. 3923 (PGG), 2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. Jan. 13, 2012) .. 2, 18, 19, 21

*McCain v. Racing*,
No. 07 Civ. 5729 (JSR), 2007 WL 2435170 (S.D.N.Y. Aug. 27, 2007) ................................. 2

*Naula v. Rite Aid of NY*,
No. 08 Civ. 11364(PGG), 2010 WL 2399364 (S.D.N.Y. Mar. 23, 2010) ................................. 8

*Piper v. Torna, Inc.*,
  No. 14 Civ. 5886(RA), 2015 WL 81992 (S.D.N.Y. Jan. 6, 2015)............................................ 17

*Pippins v. KPMG LLP*,
  11 Civ. 0377 (CM), 2011 U.S. Dist. LEXIS 30678 (S.D.N.Y. Mar. 21, 2011).... 8, 9, 19, 21, 22

*Quinn v. Walgreen Co.*,
  958 F.Supp.2d 533 (S.D.N.Y. 2013)............................................................................ 8

*Reliance Ins. Co. v. Six Star, Inc.*,
  155 F.Supp.2d 49 (S.D.N.Y. 2001) ............................................................................ 9

*Royer v. J.P. Morgan Chase & Co*,
  No. 11 Civ. 8205(LTS), 2012 WL 2877557 (S.D.N.Y. July 11, 2012)............... 3, 9, 10, 12, 13

*Sana Zara Bukhari v. Deloitte & Touche LLP*, 12 CIv. 4290 (PAE),
  2012 U.S. Dist. LEXIS 167315 (S.D.N.Y. Nov. 26, 2012)..................................................... 20

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.*,
  810 F.Supp. 486 (S.D.N.Y. 1992) ............................................................................ 21

*In re W. Electric Co.*,
  436 F. Supp. 404 (J.P.M.L. 1977)............................................................................ 23

*Wilkie v. Gentiva Health Servs.*,
  Civ. No. 10-1451 FCD/GGH, 2010 U.S. Dist. LEXIS 97212 (E.D. Cal. 2010). .............. 11, 12

**Statutes**
28 U.S.C. § 1391(b) ............................................................................ 21
28 U.S.C. § 1391(c)(2)………………………………………………………………………...17
28 U.S.C. § 1404(a) ............................................................................ 5, 7, 20, 22
29 U.S.C. § 201............................................................................ 8

**Rules**
Fᴇᴅ. R. Cɪᴠ. P. 45(b)(2)(B) ............................................................................ 26

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Ron Henry, Jose Omar Martinez, Clayton Guillory, Anita Marie Moore, Ryan Switzer, Joseph Sari, and Yuriy Kilgishov (collectively, "Plaintiffs"), on behalf of themselves and all putative collective action and class members, file this Response to the Renewed Motion to Dismiss or, Alternatively, to Transfer [Doc. 38] filed by Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "Defendants" or "Chase") and respectfully show:

## I.    PRELIMINARY STATEMENT

Defendants seek to dismiss, or alternatively to transfer this wage and hour case from New York to California pursuant to either the "first-filed" rule or 28 U.S.C. § 1404(a).  Specifically, Defendants seek to transfer this matter to the Central District of California for consolidation with *Hightower, et al. v. Washington Mutual Bank, et al.*, No. 11-cv-1802-PSG-PLAx ("*Hightower*"), a case that has been settled on behalf of classes of employees different from those presented here.

Defendants seek to transfer this case to California despite the fact that there are no ties to California.  None of the named Plaintiffs reside in California, nor did they work for Defendants in California.  Chase does not have its headquarters in California.  There are no identifiable witnesses or documents maintained in California.  Moreover, there are no known corporate policy decisions germane to this matter that were made in California.  The only basis that Defendants can suggest for transferring this case to California is the fact that another case against these Defendants and others—the *Hightower* matter—was filed there.   However, *Hightower* has settled, and that settlement does not resolve the claims of the instant case as *Hightower* relates to different classes of Chase employees and different issues and claims than those presented here.

New York is a more convenient and appropriate venue for this case.  Chase cannot be heard to complain about litigating in the forum, the Southern District of New York, where its corporate

1

headquarters is located. *Martignago v. Merrill Lynch & Co.*, No. 11 Civ. 3923 (PGG), 2012 U.S. Dist. LEXIS 4365 (S.D.N.Y. Jan. 13, 2012). Because Chase's headquarters is in New York, many of the relevant witnesses and documents will likely be in New York. Corporate decisions regarding the policies at issue here were made in this district where the corporate headquarters is located. Moreover, some of the named Plaintiffs and all of the putative Rule 23 New Jersey class members worked for Defendants in neighboring New Jersey and reside there. Clearly, New York is a more convenient venue for the parties.

As discussed in detail below, Defendants' motion should be denied for a myriad of reasons. As a threshold matter, the first-filed rule in not applicable here. The first-filed rule provides that "when two district courts concurrently have before them actions involving substantially or effectively the *same parties and issues*, there is a strong presumption in favor of transfer to the forum of the first-filed suit unless either the balance of convenience or any other special circumstances clearly favor the latter-filed action." *McCain v. Racing*, No. 07 Civ. 5729 (JSR), 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) (emphasis added) (quotations omitted). Here, the putative classes represented in this case include entirely separate and distinct groups of employees – assistant branch managers ("ABMs"), relationship managers, loan officers, private client bankers, and lead tellers – as well as a New Jersey state law class, all of which are not represented in *Hightower* and whose claims are not resolved by the *Hightower* settlement.[1] Accordingly, the parties in the two cases are different and the first-filed rule does not apply.

Likewise, the first-filed rule is inapplicable because the issues involved here are different from the central issues in *Hightower.* Here, Plaintiffs' Second Amended Complaint alleges,

---

[1] Erin Variste, a former Chase personal banker, and Marquita Bowie, a former Chase teller, were listed as named Plaintiffs in Plaintiffs' First Amended Complaint [Doc. 12]. However, since the *Hightower* settlement covers the claims of personal bankers and tellers, Ms. Bowie and Ms. Variste have decided to participate in the *Hightower* settlement and are no longer named Plaintiffs in this action.

among other things, FLSA claims on behalf of <u>exempt</u> ABMs and relationship managers who contend they were <u>misclassified</u>. *Hightower*, on the other hand, only resolves the claims of certain <u>non-exempt</u> employees including non-exempt tellers, personal bankers, SSAs, and ABM trainees who worked "off-the-clock." Thus, the nature of the overtime claims asserted here, which challenge the exempt treatment of two classes of salaried employees, are entirely distinct from that of the issues in *Hightower* which involve the allegations of underpayments to specific groups of non-exempt employees. Moreover, Plaintiffs here have asserted New Jersey overtime and minimum wage claims that are nowhere to be found in the *Hightower* operative complaint or settlement. Under very similar facts and for these reasons, Judge Swain denied an almost identical motion by Chase to transfer another matter to *Hightower* under the first-filed rule in *Royer v. J.P. Morgan Chase & Co*, No. 11 Civ. 8205(LTS), 2012 WL 2877557, at *1 (S.D.N.Y. July 11, 2012).

Equally unavailing is Defendants' request to transfer this case to the Central District of California under § 1404(a) because the balance of convenience factors weigh in favor of maintaining this case in New York. Plaintiffs chose the Southern District of New York as a convenient forum, and that selection is entitled to deference. Plaintiffs are all residents of New Jersey and Texas, while the Chase corporate headquarters is in New York City. Given the proximity between New Jersey and New York, the Southern District of New York is a far more convenient location for Plaintiffs. The location of witnesses and documents will likely be New York where Chase's headquarters is located and where pertinent policy decisions were made.

Lastly, transferring this case to California for consolidation with *Hightower*, a case that has now been settled, will not achieve judicial efficiency. The Central District of California has no familiarity with the parties or issues currently before this Court. The instant case involves different issues, parties and proposed classes. Defendants deceptively lead this Court to believe that Judge

Gutierrez in *Hightower* fully resolved the enforceability of arbitration agreements,[2] when in fact there were various arbitration agreements relating to the plaintiffs in *Hightower* that were analyzed on an individual basis. Further, arbitrability is not an issue that goes to the merits, and thus, does not invoke the first-filed rule. Chase previously argued that arbitrability formed a basis for transfer, and Judge Swain rejected the argument in *Royer* as it should likewise be rejected here. For all these reasons described in more detail below, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss or, Alternatively, to Transfer and find this case should remain in the Southern District of New York before this Honorable Court.

## II.    STATEMENT OF FACTS

### A. *Henry v. JPMorgan,* the Matter Before This Court.

On February 20, 2015, Plaintiffs filed their Second Amended Complaint ("SAC") [Doc. 30], and in response, Defendants filed a Renewed Motion to Dismiss or, Alternatively, to Transfer [Doc. 38]. Plaintiffs have filed this action against Defendants as a putative collective action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and a Rule 23 class action under New Jersey Wage and Hour Law ("NJWHL") for Defendants' failure to pay Plaintiffs and all others similarly situated overtime and minimum wages. Plaintiffs are all residents of New Jersey and Texas, while the Chase corporate headquarters is in New York. The FLSA collective action is divided into five subclasses that represent each of the following Chase employee positions: (1) assistant branch managers ("ABMs"); (2) relationship managers; (3) loan officers; (4) private client bankers; and (5) lead tellers. The Rule 23 class action is based on NJWHL overtime and minimum wage claims asserted on behalf of a putative class of current and former employees who worked for Chase in New Jersey.

---

[2] Def. Motion at p. 2. [Doc. 38].

The FLSA subclasses are represented by the seven named Plaintiffs in this matter as follows: Plaintiff Ron Henry represents the subclasses of assistant branch managers and lead tellers; Plaintiff Ryan Switzer represents the subclass of relationship managers; Plaintiffs Clayton Guillory, Anita Marie Moore, Jospeh Sari, and Yuriy Kilgishov represent the subclass of loan officers; and Plaintiff Jose Omar Martinez represents the subclass of private client bankers. [SAC ¶¶ 12-18].  In addition to their FLSA claims, Plaintiffs Sari and Kilgishov also represent a Rule 23 putative class of New Jersey Chase employees pursuant to NJWHL. [SAC at ¶¶ 17-18].

With respect to two of the positions at issue—ABMs and relationship managers—Plaintiffs assert that they were underlined misclassified as exempt workers who were paid on a salary basis and denied all overtime compensation.  Chase ABMs are salaried employees whose positions require no college degree and primarily involve bank teller and customer service tasks.  [SAC at ¶ 85]. Relationship managers are the primary salesforce selling Chase's financial products and services to business customers in Chase bank branches and other retail banking facilities.  [SAC at ¶ 65]. The California *Hightower* case does not involve any claims of misclassification by exempt workers, and no issues were ever resolved there with respect to whether any Chase job position was properly classified as exempt.

The remaining three FLSA subclasses in this case are comprised of three different non-exempt positions asserting off-the-clock claims: loan officers, private client bankers, and lead tellers.  Loan officers are primarily responsible for originating mortgage loans for Chase.  The job duties of the members of the private client banker subclass require providing banking services for Chase clients who hold a minimum of $500,000 or more of investable assets.  [SAC at ¶ 172].  The private client banker position is different, separate, and distinct from the personal banker position.[3]

---

[3] *See* Ex. 4, Declaration of Jose Omar Martinez ("Martinez Decl.).

Finally, the lead teller position is separate and distinct from the teller position because lead tellers have greater and more time consuming responsibilities than tellers. [*See* SAC at ¶ 154]

**B. The Settled *Hightower* California Action.**

On March 2, 2011, Evan Hightower, a former Chase personal banker, and Ann Ross, a former Chase teller, filed a class and collective action complaint asserting various California Labor Code violations and FLSA claims against Washington Mutual Bank, JP Morgan Chase Bank, and DOES 1-10 in the Central District of California. *Hightower, et al. v. Washington Mutual Bank, et al.*, No. 11-cv-1802-PSG-PLAx, Dkt. No. 1. Within 11 months following the filing of the *Hightower* complaint, 6 different cases were filed by other personal bankers and tellers in California state courts and federal district courts across the country alleging state and federal wage and hour violations against Chase. These 6 cases, along with one other matter that was filed prior to *Hightower*, were ultimately consolidated with *Hightower* before Judge Gutierrez in the Central District of California as follow (in chronological order from the date of their original filing):

1. On February 17, 2011, *Salazar v. JPMorgan Chase Bank, N.A.* ("*Salazar*") was originally <u>filed in the Southern District of California</u> alleging class action California state law and collective action FLSA claims on behalf of non-exempt Chase tellers. The Southern District of California granted Chase's motion to transfer *Salazar* to the Central District of California where *Salazar* was assigned to Judge Gutierrez.

2. On March 10, 2011, *Simpson v. JPMorgan Chase Bank, et al.* ("*Simpson*") was originally <u>filed in the Superior Court for the County of San Diego</u> alleging class action claims on behalf of non-exempt personal bankers and non-exempt reo specialists. Chase removed the state court action to the Southern District of California, and plaintiffs and Defendants agreed to transfer the action to the Central District of California where the clerk assigned *Simpson* to Judge Gutierrez.

3. On May 24, 2011, *Al-Chaikh v. JPMorgan Chase Bank, et al.* ("*Al-Chaikh*") was originally <u>filed in the Los Angeles Superior Court</u> alleging California state labor law claims on behalf of non-exempt tellers. Chase removed the state court action to the Central District of California where it was deemed a related case to *Hightower.*

4. On July 20, 2011, *Khutoretsky v. JPMorgan Chase & Co., et al.,* ("*Khutoretsky*") was originally filed in the Southern District of New York alleging FLSA and New York state

labor law claims on behalf of Chase non-exempt <u>personal bankers</u>. *Khutoretsky* was transferred to the Central District of California.

5. On August 26, 2011, *Yanez v. JPMorgan Chase Bank, N.A., et al.* ("*Yanez*") was originally <u>filed in the Superior Court for the County of Los Angeles</u> alleging California state wage and hour law claims on behalf of a putative class of non-exempt <u>personal bankers who worked for Chase in the state of California</u>. Chase removed *Yanez* to the Central District of California where it was deemed a related case to *Hightower*.

6. On November 22, 2011, *Slikker v. JPMorgan Chase Bank N.A.* ("*Slikker*") was filed in the <u>Central District of California</u> where it was deemed a related case to *Hightower* and assigned to Judge Gutierrez.

7. On February 2, 2012, *Gunn v. JPMorgan Chase & Co., et al. ("Gunn")* was originally filed in the Northern District of Illinois seeking to recover unpaid overtime under Illinois state wage and hour laws on behalf of a putative class of non-exempt <u>personal bankers</u> who worked for Chase in the state of Illinois. *Gunn* was transferred to *Hightower*.

On November 24, 2014, the parties in *Hightower* filed a Joint Stipulation of Class and Collective Action Settlement and Release memorializing the parties' $12 million agreement to: (1) certify a nationwide FLSA collective action of non-exempt tellers, personal bankers, ABM trainees, and sales and service associates ("SSAs") for settlement purposes;[4] and (2) certify Rule 23 classes of tellers, personal bankers, ABM trainees, and SSAs who worked in the states of Arizona, California, Florida, Illinois, Kentucky, Louisiana, Michigan, New York, Ohio, Texas, Washington, and Wisconsin for settlement purposes.[5]

According to the terms of the *Hightower* settlement agreement, the persons who are included in the settlement must have worked in a "covered position" defined as follows:

1. "<u>Teller</u> means an employee who worked for any of Defendant's branches in a Teller position during the Covered Period;"[6]

2. "<u>Personal Banker</u> means an employee who worked for any of Defendant's branches in a Personal Banker position during the Covered Period;"[7]

---

[4] Ex. 1, *Hightower* Joint Stipulation of Class and Collective Action Settlement Agreement ("Hightower Settlement Agreement") at ¶¶ 16, 71.
[5] *Id*. at. ¶¶ 9, 16.
[6] *Id*. at ¶¶ 60-61 (emphasis added).
[7] *Id*. at ¶¶ 42-43 (emphasis added).

3.  "ABM trainee means an employee who worked for any of the Defendant's branches in an Assistant Branch Manager-Trainee position;"[8] and

4.  "SSA means an employee who worked for any of Defendant's branches in a Sales & Service Associate or Operations Supervisor position during the Covered Period."[9]

Thus, the *Hightower* settlement does not include any employees with the job positions included in this case: assistant branch managers, relationship managers, loan officers, private client bankers, or lead tellers.   Moreover, the settlement does not include any exempt workers nor does it settle a New Jersey class.   Judge Gutierrez preliminarily approved the settlement on February 3, 2015, and upon information and belief, notice of the settlement has issued to qualified class members.

## III.     ARGUMENT AND AUTHORITIES

### A.  The Court Should Not Dismiss or Transfer this Case Because the "First Filed" Rule is Inapplicable.

As part of its general power to administer its docket, a district court may stay, dismiss, or transfer a suit that is duplicative of another federal court suit.   *Naula v. Rite Aid of NY*, No. 08 Civ. 11364(PGG), 2010 WL 2399364, at *2 (S.D.N.Y. Mar. 23, 2010).   "[D]uplicative lawsuits are those in which the issues have such an identity that a determination in one action leaves little or nothing to be determined in the other."   *Id.*   Where there are two competing lawsuits brought in different fora, the first-filed rule is generally applicable "when *identical* or substantially similar parties and claims are present in both courts."   *Pippins v. KPMG LLP*, 11 Civ. 0377 (CM), 2011 U.S. Dist. LEXIS 30678, at *4 (S.D.N.Y. Mar. 21, 2011) (emphasis added).   "[A]lthough the rule creates a general presumption that a first-filed suit has priority, that presumption is not applied in a rigid or mechanical way.   Rather, because the complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, the district court is instead required to consider

---

[8] *Id.* at ¶¶ 1-2 (emphasis added).
[9] *Id.* at ¶¶ 57-58 (emphasis added).

the equities of the situation when exercising discretion." *Quinn v. Walgreen Co.*, 958 F.Supp.2d 533, 539 (S.D.N.Y. 2013) (quotations omitted).

However, even when the two cases are identical—which they are not here—"the Second Circuit recognizes two circumstances that warrant departure from the first-filed rule: (1) where there are special circumstances,[10] and; (2) where the balance of convenience tilt in favor of the second forum." *Pippins,* 2011 U.S. Dist. LEXIS 30678, at *5. Thus, even if the two cases are identical, an analysis of the balance of convenience may still warrant departure from the first-filed rule. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 55-56 (S.D.N.Y. 2001).

### 1. The California *Hightower* case and the instant case do not involve the same issues.

The first-filed rule is inapplicable when two district courts have before them two cases that involve different issues. In the FLSA context, misclassification claims and off-the-clock claims involve issues that are separate and distinct from each other. *See Royer v. J.P. Morgan Chase & Co., et al.*, No. 11 Civ. 8205(LTS), 2012 WL 2877557, at *1 (S.D.N.Y. July 11, 2012). This case involves two subclasses of misclassified, salaried exempt workers—assistant branch managers and relationship managers—in which the central issue is whether they should have been classified as exempt under the FLSA. In contrast, the California *Hightower* action, solely involved the claims of certain hourly non-exempt workers who Defendants concede were entitled to overtime compensation. The central issue in the California *Hightower* action was whether these particular groups of employees—personal bankers, tellers, ABM trainees and SSAs—worked "off-the-clock" without overtime compensation. Resolution of the question of whether assistant branch managers and relationship managers are misclassified employees was never addressed or even raised in *Hightower*. Cases where the first-filed rule was found to apply involved situations in

---

[10] "Special circumstances are present when the first suit was filed as a result of forum shopping or when the first suit was a result of anticipatory filing." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F.Supp.3d 385, 393 (S.D.N.Y. 2014).

which "a resolution in [one] action leaves little to be decided in" the other. *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005). Here, *Hightower* has been settled, but that resolution does not address or resolve the issues in this case. In their Motion, Defendants all but ignore the fact that two misclassification, exempt positions—assistant branch managers and relationship managers—are at issue here. That is because this fact alone means that this case and *Hightower* are not identical and the first-filed rule does not apply.

For this very reason, in *Royer*, the Southern District of New York denied Chase's prior attempt to have a case transferred to *Hightower*. In *Royer*, former Chase employees sought overtime wages on behalf of a nationwide class of "business bankers," as well as subclasses of New York and New Jersey business bankers who claimed that Chase misclassified them as "exempt." *Royer*, 2012 WL 2877557, at *1. Chase argued that, pursuant to the first-filed rule, *Royer* should be transferred to the Central District of California and consolidated with *Hightower*. *Id.* The Southern District of New York denied transfer because *Royer* did not effectively involve the same issues. *Id.* Judge Laura Taylor Swain reasoned that,

> While the parties in both actions may partially overlap, the nature of the overtime claims asserted in this action – challenging the exempt treatment of a certain class of salaried employees – ***is entirely distinct from that of the claims asserted in the California Action*** – allegations of underpayments to non-exempt employees.

*Id.* (emphasis added). In sum, the proposed class of misclassified "business bankers" was not part of the putative class in *Hightower*, and the issues in the two cases were necessarily distinct. *Id.* Thus, the court denied Chase's motion to transfer *Royer* to the Central District of California. *Id.*

Like the issues of the exempt class of employees in *Royer*, the issues surrounding the misclassification claims of the assistant branch managers and relationship managers before this Court are completely different and distinct from the off-the-clock issues in *Hightower*. The resolution and settlement of the claims in *Hightower* is immaterial and irrelevant to claims of the

misclassified assistant branch managers and relationship managers here. Thus, the issues in *Hightower* and the instant case are substantially different, and transfer under the first-filed rule is unwarranted based on the same rationale in *Royer*.

Moreover, the New Jersey Rule 23 claims before this Court involve New Jersey specific state-law issues that have never been asserted or litigated in *Hightower*. Under such circumstances, other courts have determined that transfer under the first-filed rule is not appropriate. For example, in *Wilkie v. Gentiva Health Servs.*, the first-filed action was maintained in the Eastern District of New York and asserted nationwide FLSA collective action claims and North Carolina and New York state law class action claims. Civ. No. 10-1451 FCD/GGH, 2010 U.S. Dist. LEXIS 97212, at *1 (E.D. Cal. 2010). The second-filed action was brought against the same defendant in the Eastern District of California and asserted nationwide FLSA claims and California state law claims. *Id.* at *1-2. The court declined to transfer the second-filed action to the Eastern District of New York because the California class was "separate and distinct from any and all…sub-classes [in the first-filed action]." *Id.* at *4. The California state law claims in the second-filed action were "dissimilar from both the [first filed] action's FLSA claim and the North Carolina and New York state law claims." *Id.* Just as the California state law claims barred transfer of *Wilkie,* the New Jersey state law claims asserted before this Court should also bar transfer of this action to California. While *Hightower* includes several class actions for employees who worked in various states, New Jersey is ***not*** one of the states involved. Thus, the New Jersey state law claims here are dissimilar from any state law claims asserted in *Hightower*.

Defendants argue in favor of transferring the instant case because other cases, particularly *Khutoresky* and *Gunn*, were transferred and ultimately consolidated with *Hightower*. [Def. Motion at p. 15]. However, a comparison of this case to the circumstances warranting transfer in

*Khutoresky* and *Gunn* is misplaced. The collective and class actions asserted in *Khutoresky* and *Gunn* were filed on behalf of only one type of employee—personal bankers, that were already represented in *Hightower*. Thus, transfer of *Khutorestsky* and *Gunn* to *Hightower* was clear because the parties and claims at issue were identical as all three cases involved overtime claims on behalf of putative classes of personal bankers. Here, there are five classes of employees represented in this case that are not represented in *Hightower,* and the misclassification claims of the assistant branch managers and relationship managers here are entirely distinct from the off-the-clock analysis that is central in *Hightower*. Further, the New Jersey state law class claims asserted here are distinct. As such, this case should not be dismissed or transferred because the first-filed rule is inapplicable.

### 2. The California *Hightower* case and the instant case do not involve the same parties and classes.

Not only are the central issues in this case and *Hightower* dissimilar, but the parties and classes in the two cases are also substantially different. Courts across the country, including the Southern District of New York, have refused to dismiss and/or transfer allegedly related actions when the class in the first filed action is not <u>*subsumed*</u> by the class in the second-filed action. *See Royer v. J.P. Morgan Chase & Co.*, No. 11 Civ. 8205(LTS), 2012 WL 2877557, at *1 (S.D.N.Y. July 12, 2012) ("In the instant action, the proposed class of business bankers is not part of the putative class in *Hightower*, and the issues in the two cases are necessarily distinct); *Wilkie,* 2010 U.S. Dist. LEXIS 97212, at *10 ("As plaintiff argues, some employees included in the instant action may not ultimately be included in the *Rindfleisch* action. . . As such, the court cannot find at this juncture that substantial similarity exists between the nation-wide classes in the two actions."). This case is not "subsumed" by *Hightower* as evidenced by the fact that *Hightower* has settled and the claims, parties and classes in this case were not included in the settlement. The

putative class and subclasses of employees in the instant case include assistant branch managers, relationship managers, loan officers, private client bankers, and lead tellers, as well as a New Jersey class, all of which are not represented in *Hightower* nor included in the settlement.

It is ***undisputed*** that three of the FLSA subclasses in this case, including assistant branch managers, relationship managers, and loan officers, and the New Jersey state law class, are not at issue in *Hightower*.  In fact, Defendants virtually ignore these groups, and instead, focus their entire argument on only two of the five positions at issue here: private client bankers and lead tellers.  Defendant erroneously claim that the "personal banker" class in *Hightower* includes the "private client banker" class here and that the "teller" class in *Hightower* similarly includes the "lead teller" class in this action.  As discussed below, Defendants' contention is meritless because the "private client banker" position is separate and distinct from the "personal banker" position, and the "lead teller" position is separate and distinct from the "teller" position.  Moreover, the *Hightower* settlement does not include "private client bankers" or "lead tellers."[11]

There are various distinct "banker" positions at Chase.  For example, in *Royer*, the position at issue was the "business banker."[12]  Here, the "private client banker" position is at issue, and it is different from the "personal banker" position.  A "private client banker" is deemed a higher level position at Chase than a "personal banker" (the position at issue in *Hightower*).  The Chase job history data for Plaintiff Martinez indicates that he received a "promotion" from the position of "personal banker" to "private client banker" on March 16, 2012.  Ex. 2, Job Profile for Jose O. Martinez. [13]  Likewise, the two positions have different and distinct job codes: the private client

---

[11] *See* Ex. 1, Hightower Settlement Agreement at ¶¶ 9, 16, 71.

[12] *Royer*, 2012 WL 2877557, at *1.

[13] Defendants argue that the fact that Plaintiffs' First Amended Complaint alleged that Mr. Martinez worked as a personal banker.  While Mr. Martinez did work for Chase as a personal banker, upon review of Mr. Martinez's positions and dates of employment, the only position covered under the relevant time period here is the private client banker position.  Thus, Plaintiffs' Second Amended Complaint accurately reflects Mr. Martinez as the representative for the private client banker subclass.

banker is job code CM7024, while personal banker is job code 300310. *Id.* Accordingly, Chase's own records indicate that these are distinct positions. *Id.*

While it is clear from Chase's corporate records that the "personal banker" and "private client banker" positions are different simply by virtue of the difference in title and job code, the duties of the two positions also substantially differ. Private client bankers only service the accounts of Chase "private clients" who possess at least $500,000 of investable assets. Ex. 4, Martinez Decl. at ¶ 6. The demands of handling the accounts of affluent private clients is distinct from the routine tasks of personal bankers who generally only open accounts and assist walk-in traffic in the branch. *Id.* at ¶ 8. Personal bankers cannot discuss any aspect of the Chase private client program with the private client because personal bankers are not trained on the types of products and opportunities offered only to Chase private clients. *Id.* at ¶ 10. The goals of private client bankers differ from the goals of personal bankers. Private client bankers' sales goals are centered on the amount of money brought into the bank through private clients, while personal bankers are focused on the number of new accounts that they open. *Id.* at ¶ 11. The job duties of private client bankers are more challenging and time consuming that the routine tasks of personal bankers. *Id.* at ¶ 12. The positions are simply not the same.

Likewise, the position of "teller" (included in the *Hightower* settlement) is separate and distinct from the position of "lead teller" here. Reviewing the job history of Plaintiff Henry reveals that the position of "lead teller" is clearly a promotion from a simple "teller" position. Ex. 3, Ron Henry Job Profile. "Lead teller" is a higher level position than a simple "teller" and has a different job code. *Id.* (the job code for "lead teller" is 300311 and for "teller" is 300298). Moreover, the job duties for the two positions differ. In sum, the job duties of a lead teller are far more complex, challenging and time consuming than those of a teller. [SAC at ¶154].

14

These distinctions are underscored by the clear language of the *Hightower* settlement agreement limiting recovery to "covered positions" that are defined to specifically include: "Teller," "Personal Banker," "ABM-trainee," and "SSA."[14]  The definitions are narrow and do not include catchall phrases where "private client bankers" and/or "lead tellers" may be lumped into the definitions as Defendants suggest.  Simply put, the *Hightower* settlement is completely void of any reference to "private client bankers," "lead tellers," or any of the other three job positions—assistant branch managers, relationship managers and loan officers—represented in the instant case.  Chase highlights the fact that lead tellers and private client bankers submitted declarations in support of the *Hightower* motion for conditional certification, but at the same time, lead tellers and private client bankers are specifically excluded and nowhere mentioned in the settlement.

Defendants go to great lengths to attempt to create similarity between "tellers" and "lead tellers" and between "personal bankers" and "private client bankers" where there is none. For example, Defendants argue that "Plaintiffs' own discovery requests define the term "Personal Banker" to include job titles such as "private bankers" or "any similar job title," and defines "Teller" to include "lead teller[s]." [Def. Motion at p. 14].  Plaintiffs sent Defendants discovery requests prior to filing their Second Amended Complaint.  Plaintiffs are not seeking to represent tellers or personal bankers whose claims have been settled.  Any discovery Plaintiffs will seek after lifting of the stay imposed by this Court, will relate to assistant branch managers, relationship managers, loan officers, private client bankers, lead tellers, and the New Jersey class.

 Dismissal or transfer of this matter would be highly prejudicial to the seven named Plaintiffs and putative FLSA collective action members and Rule 23 New Jersey class before this Court because their rights would not be vindicated in their chosen forum or, importantly, through

---

[14] Ex. 1, *Hightower* Settlement Agreement at ¶¶ 1-2, 16, 42-43, 57-58, 60-61.

the *Hightower* settlement.  This case is clearly not "subsumed" in *Hightower*; otherwise, the five job positions at issue here and the New Jersey class would necessarily have to be included in the settlement and they are not.  Further, transfer of this action to *Hightower* would also prove prejudicial because no plaintiff in *Hightower* adequately represents the interests of the Plaintiffs and the putative classes and subclasses here.  The parties in *Hightower* have already formalized a settlement agreement that does not include any of the types of employees in this case.  Accordingly, this Court should deny Defendants' motion.

### 3.  The balance of convenience factors favor maintaining this case in the Southern District of New York rather than transfer under the first-filed rule.

The first-filed rule "need not be applied where there is a showing of balance of convenience … giving priority to the second [case]."  *Am. SS. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474, 481 (S.D.N.Y. 2007) (quotations omitted).  "The factors to be weighed in balancing the competing interests for the purposes of assessing the applicability of the first-filed rule and deciding a motion to transfer venue are essentially the same, and so a single analysis will resolve both issues."  *Id.*  As discussed below, the balancing of convenience factors militate against transfer under the first-filed rule or pursuant to 28 U.S.C. § 1404.

### B.    This Action Should Not Be Transferred Pursuant to 28 U.S.C. § 1404.

Section 1404(a) provides that, "in the interest of justice," a district court may transfer an action to another district court "where [the] action might have been brought."  28 U.S.C. § 1404(a).  A determination of a  § 1404(a) transfer requires a two-part inquiry: (1) "whether the action to be transferred might have been brought in the transferee court; and (2) whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate."  *Lihuan Wang v. Phoenix Satellite Television US, Inc.*, No. 13 Civ. 218(PKC), 2014 U.S. Dist. LEXIS 4173, at *4 (S.D.N.Y. Jan. 13, 2014).

"[T]here is ordinarily a strong presumption in favor of a plaintiff's choice of forum, and it is the moving party [that] bears the burden of showing, by clear and convincing evidence, that a transfer is appropriate. *Piper v. Torna, Inc.*, No. 14 Civ. 5886(RA), 2015 WL 81992, at *1 (S.D.N.Y. Jan. 6, 2015) (quotations omitted). Defendants have not met their high burden and this action should not be transferred to the Central District of California.

**1. The Chase corporate headquarters is in the Southern District of New York making it the most convenient and appropriate venue.**

In order to determine the first inquiry in a section 1404(a) analysis—whether the action to be transferred might have been brought in the transferee court—subject  matter jurisdiction, personal jurisdiction and venue all must have been proper in the proposed transferee court at the time the action was filed. *Martignago,* 2012 U.S. Dist. LEXIS 4365, at *8-9. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the district where Plaintiffs' claims arose or any district where Defendants reside.[15]  28 U.S.C. § 1391(b). While the Plaintiffs here may have been able to file their FLSA suit in the Central District of California because Defendants' "reside" there, any district in California would not have been the most suitable forum for the litigation considering that Plaintiffs worked in New Jersey and Texas, and Chase is headquartered in New York.

For example, in *Earley,* an employee who worked in Pennsylvania sued his employer for recovery of overtime compensation pursuant to the FLSA in the Southern District of New York despite the fact that his employer was headquartered in Massachusetts. *Early v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP)*,* 2007 U.S. Dist. LEXIS 40125, at *1 (S.D.N.Y. June 4, 2007). Venue in the Southern District of New York was "not the most appropriate for the action" since the employee's claim arose in Pennsylvania, where he worked, and his employer was

---

[15]Under the general venue statute, a defendant "resides" in any venue where it conducts business and is subject to the court's personal jurisdiction.  28 U.S.C. § 1391(c)(2).

headquartered in Massachusetts.  *Id.* at \*6.  Similarly here, because Plaintiffs' claims did not arise

in California, and Chase is not headquartered in California, the Central District of California would

not have been an appropriate venue for this action compared to the Southern District of New York,

where Chase is headquartered and is in close proximity to New Jersey.

> ### 2.  Analysis of the balance of convenience factors weigh strongly against transferring this case to California.

The second inquiry of the § 1404(a) determination – an analysis of the balance of

convenience factors—weighs in favor of maintaining this case in the Southern District of New

York.  In deciding a 28 U.S.C. § 1404(a) motion, courts consider:

> (1) the plaintiff's choice of forum, (2) the convenience of  the witnesses, (3) the location of the relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of the operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice[.]

*Martignago*, 2012 U.S. Dist. LEXIS 4365, at \*9-10.  "The moving parties . . . bear the burden of

showing that transfer is warranted in light of these factors."  *Farrior v. George Weston Bakeries*

*Dist.,* No. 08 Civ. 2705, 2009 U.S. Dist. LEXIS 2636, at \*9 (E.D.N.Y. Jan. 15, 2009).  Chase has

not met that burden because the factors weigh in favor of keeping this case in New York.

> ### a.  Plaintiffs' choice of forum.

Generally, a "plaintiff's choice of forum is entitled to significant consideration and will not

be disturbed unless other factors weigh strongly in favor of transfer."  *Martignago*, 2012 U.S. Dist.

LEXIS 4365, at \*10 (internal quotations omitted).  Although a plaintiff's choice of forum is

entitled to less deference where, as here, the plaintiff does not reside in his chosen forum and the

plaintiff seeks to represent a class, "some deference is due and, competing against Defendants'

preference, [the plaintiff's] preference prevails."  *Id*. at \*12.  Moreover, because putative class

members and some of the named Plaintiffs live in neighboring New Jersey, New York is certainly a more convenient forum than California. Therefore, this factor weighs against transfer.

### b. Convenience of the witnesses.

While no forum is convenient for <u>all</u> witnesses considering the nationwide collective nature of this case, the Southern District of New York is a more convenient forum compared to the Central District of California because Chase is headquartered in New York and critical witnesses that are key to Plaintiffs' claims will come from Chase's headquarters. In fact, Defendants have not identified a single key witness for whom California would be the more convenient forum.

Under analogous circumstances, in *Pippins*, the Southern District of New York denied the employer's motion to transfer *Pippins* to California, the location of the first-filed action, because the balance of convenience factors weighed in favor of maintaining the FLSA action in New York. *Pippins v. KPMG LLP*, 11 Civ. 0377 (CM), 2011 U.S. Dist. LEXIS 30678, at *15 (S.D.N.Y. Mar. 21, 2011). In *Pippins*, the court held that the factors regarding the convenience of the witnesses weighed against transferring the matter because the defendant employer was headquartered in New York. *Id.* "While the individual managers from various regional KPMG offices would certainly be relevant witnesses, the key witnesses in this case are the architects of the policy" to classify all Audit Associates as exempt, and these witnesses work in New York City." *Id.* at 11*; see also Martignago v. Merrill Lynch & Co.*, No. 11 Civ. 3923 (PGG), 2012 U.S. Dist. LEXIS 4365, at *17 (S.D.N.Y. Jan. 13, 2012) ("Where a plaintiff asserts – on behalf of herself and a nationwide collective class – FLSA violations flowing from a corporate policy mandating an allegedly unlawful compensation scheme, courts generally conclude that the more critical and extensive [testimony] is likely to be provided by the parties and witnesses residing . . . where [the company] is headquarters and [where the] executives who set company-wide policies are based.").

Defendants incorrectly assume that because Chase purportedly employs more workers in California than in any other state, that California is a more convenient forum for this litigation. [Def. Motion at p. 16].  At this juncture, neither Defendants nor Plaintiffs can accurately predict which state will contain the highest number of FLSA opt-in plaintiffs.  As Defendants are well aware, "unlike Rule 23 class actions, FLSA collective actions are opt-in, meaning that a person is not a party to the action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (quotations omitted).  Thus, the highest number of opt-ins could potentially come from a state other than California.   In fact, because this case includes a New Jersey state law putative class, it is likely that more class members will be from the neighboring state of New Jersey. Thus, the number of potential opt-ins who reside in California is no basis to justify transferring this case out of New York where Chase has its headquarters.

### c.  Location of relevant documents.

The documents most relevant to Plaintiffs' FLSA and New Jersey claims include but are not limited to their paystubs, time records, personnel files, e-mails, and various Chase corporate policy documents all which most likely originate from or are maintained at Chase's headquarters in New York City.  *See Sana Zara Bukhari v. Deloitte & Touche LLP*, 12 CIv. 4290 (PAE), 2012 U.S. Dist. LEXIS 167315, at *13 (S.D.N.Y. Nov. 26, 2012) ("Plaintiffs represent. . ., that Deloitte's headquarters are in New York City, and that relevant witnesses and documents are in New York City."). This factor weighs in favor of maintaining this case in New York.

### d.  Convenience of the parties.

Plaintiffs have chosen the Southern District of New York as their selected forum indicating that this forum is convenient for Plaintiffs.  "Even when the plaintiff is not a resident of the chosen

forum, his choice is still entitled to significant weight." *Adams v. Key Tronic Corp.*, No .94 Civ. 535 (MBM), 1996 WL 474172, at *3 (S.D.N.Y. Aug. 21, 1996) (citing *Sunshine Cellular v. Vanguard Cellular Sys., Inc.,* 810 F.Supp. 486, 500 (S.D.N.Y. 1992)).    Chase would not be inconvenienced by litigating in this district because this is where its headquarters is located. *Pippins*, 2011 U.S. Dist. LEXIS 30678, at *12 (noting that the employer would not be "terribly inconvenienced" by litigating the FLSA case in New York as opposed to California because New York is where its headquarters is located.); *Adams*, 1996 WL 474172, at *6 ("Because plaintiffs have waived the convenience of their home forum by filing in this district, and because New York is IBM's principal place of business, New York appears to be a convenient forum for both parties.). Accordingly, the Southern District of New York is a much more convenient forum for the parties than the Central District of California, and this factor weighs against transfer.

### e.   Locus of operative facts.

"[T]he locus of operative facts is the location where policy is determined, corporate headquarters." *Pippins*, 2011 U.S. Dist. LEXIS 30678, at *13.  Because Plaintiffs' claims focus on the nature and implementation of Chase's company-wide policies and not those of any of Plaintiffs' bank branches in particular, it is likely that most discovery will take place at Chase's headquarters.  *See Martignago v. Merrill Lynch & Co.*, 2012 U.S. Dist. LEXIS 4365, at *23. Accordingly, locus of operative facts – weigh in favor of maintaining this action in New York.

### f.  Availability of process to compel attendance of unwilling witnesses.

The most important witnesses to Plaintiffs' case who will be capable of testifying to the creation and implementation of Chase's corporate policies and practices will come from Chase's headquarters in New York City.[16]  The Central District of California would not have the power to

---

[16] Defendants' attempt to dispute JPMorgan Chase & Co.'s employment relationship with Plaintiffs is disingenuous considering that the *Hightower* Fourth Amended Complaint contains JPMorgan Chase & Co. as a defendant in many

compel witnesses who live in New York because they are more than 100 miles from California. FED. R. CIV. P. 45(b)(2)(B).    However, this Court would at least have the power to compel witnesses who live in or around New York City, Chase's headquarters.  *See Sana Zara Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290 (PAE), 2012 U.S. Dist. LEXIS 167315, at*15 (S.D.N.Y. Nov. 26, 2012) (indicating that the factor regarding the availability to compel witnesses weighed in favor of maintaining the case in New York because the courts in the first-filed action would not possess the power to compel witnesses who lived around the employer's headquarters).

### g.  Relative means of the parties.

The relative means of the parties is a factor that weighs heavily in favor of Plaintiffs.  "The Plaintiffs are individual employees of the Defendant, a multi-billion dollar international enterprise."  *Pippins,* 2011 U.S. Dist. LEXIS 30678, at *13.  Defendants' resources obviously dwarf those of Plaintiffs, who are individuals seeking to recover unpaid wages. Accordingly, litigating this action in California would impose a financial burden on Plaintiffs which Defendants would not incur by litigating in the location of their headquarters—New York.  *Id.*

### h.  Forum's familiarity with governing law.

A forum's familiarity with governing law is generally considered a neutral factor, as "district courts are equally familiar with, and capable of applying the legal principles necessary to adjudicate [Plaintiffs'] case."  *Farrior v. George Weston Bakeries Dist.,* No. 08 Civ. 2705, 2009 U.S. Dist. LEXIS 2636, at *29 n. 6 (E.D.N.Y. Jan. 15, 2009).

---

of the consolidated actions it has settled.  Additionally, Chase's Motion is an improper procedural vehicle to dispute the employment relationship between Plaintiffs and JPMorgan Chase & Co.

**i.  Trial efficiency and interests of justice.**

The goal of the first-filed rule is to promote judicial economy.  *Comedy Partners v. Street Players Holding Corp*., 34 F. Supp. 2d 194, 195-96 (S.D.N.Y. 1999).  As a practical matter, courts are reluctant to transfer a case to a different forum for consolidation with another matter that is far advanced in litigation.  For example, in *In re W. Electric Co.,* 436 F. Supp. 404 (J.P.M.L. 1977), the Judicial Panel on Multidistrict Litigation refused to transfer a patent infringement case that arose after a series of other patent infringement cases were consolidated in the Eastern District of Virginia.  *Id.* at 406.  The panel held that transfer of the matter would "not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation" because, among other reasons: (1) all except three of the actions in the transferee district had been settled or dismissed; and (2) discovery on the issue of validity of the patent had been completed in the transferee district.  *Id.* at 405.

Transfer of this case to the Central District of California for consolidation with *Hightower* would not be judicially efficient because, like *In re W. Electric Co.,* the *Hightower* matter has already been settled, and discovery, which did not include discovery relating to any of the Plaintiffs' or putative classes' claims, has closed.  Judge Gutierrez has already preliminarily approved the *Hightower* settlement, and to transfer this case to California for consolidation with a case which has already been settled, is inefficient.  Also, Judge Gutierrez has no familiarity with the parties, issues, classes and claims here because they are not identical to those in *Hightower*. Moreover, trial efficiency cannot be accomplished by transfer because *Hightower* will never be tried.  The settlement in *Hightower* prevents any consolidation or coordination of discovery and pretrial proceedings with respect to all the classes of employees here.  *See Chemi Spa v. GlaxoSmithKline*, No. 04-4545, 2004 U.S. Dist. LEXIS 25335, at *8 (E.D. Penn. Nov. 24, 2004)

(declining to transfer second-filed action pursuant to § 1404(a) where the first-filed action was settled, subject to court approval, and "any consolidation or coordination of discovery or pretrial proceedings of this case with the Massachusetts cases will not" avoid duplicative litigation and promote judicial economy and efficiency.").

Defendants disingenuously argue that the interests of justice favor transfer because "all but one of the Plaintiffs here have executed an arbitration agreement" that "Judge Gutierrez has already held enforceable." [Doc. 38 at 18]. Defendants' argument is misplaced. To begin, in *Hightower*, Defendants moved to compel arbitration with respect to ten individual plaintiffs. Judge Gutierrez analyzed the specific facts of each individual plaintiff's arbitration agreement in *Hightower* to render a decision. Here, at the Initial Conference of this matter, this Court ordered that Defendants produce all arbitration agreements between Chase and each of the Plaintiffs. Yet, Chase has refused to produce each of the Plaintiffs' SACN Agreements and Form U-4 documents despite this Court's order to produce all arbitration agreements. Defendants have also acknowledged that some of the Plaintiffs here do not have signed arbitration agreements or a signed offer letter, and with respect to others, Defendants have failed to produce signed arbitration agreements.[17] For example, based on the documents produced by Defendants, Plaintiffs Guillory, Moore, and Switzer do not know the contents of the specific BAA that purportedly applies to them, if any. Thus, Defendants deceitful claims that "all but one of the Plaintiffs here have executed an arbitration agreement" that "Judge Gutierrez has already held enforceable" is simply incorrect. [Def. Motion at p. 18].

In any event, the arbitrability of claims is not the type of issue to trigger the first-filed rule. Arbitrability does not go to the merits of any issue, and therefore, the resolution of that question

---

[17] Ex. 5, Correspondence re Arbitration Agreements.

would not leave "little to be decided" in the other action.  *See Fuller,* 370 F. Supp. 2d at 690.  In fact, Chase made the same argument in *Royer* regarding arbitration that Defendants make here.  In *Royer*, Judge Swain was unpersuaded and refused to transfer *Royer* to the California *Hightower* case.  Specifically, in their motion to transfer in *Royer*, Chase argued that "both Courts likely will be called upon to determine the enforceability of overlapping arbitration agreements among some of the Plaintiffs, Opt-Ins, and/or those who may seek to join the case.  Litigating these issues in separate courts would be a waste of the Courts' and the parties' resources, and create the risk of inconsistent decisions with respect to these issues."[18]  The *Royer* court rejected the argument and denied transfer.  Like *Royer*, the issue of arbitrability here does not provide a basis for transfer.

As set forth above, all of the Section 1404(a) factors weigh against transferring the instant action or are at best neutral.  Accordingly, Defendants have failed to meet their high burden to show that transfer is warranted, and their motion should be denied.

## IV.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss or, Alternatively, to Transfer and find that *Henry* should remain in the Southern District of New York before this Honorable Court.  Plaintiffs further respectfully request that the Court lift the discovery stay imposed in this matter.

Dated: March 20, 2015

---

[18] *Royer v. J.P. Morgan Chase & Co.*, C.A. No. 11 CV 8205 (LTS), Memorandum of Law in Support of Defendants' Motion to Transfer Venue [Doc. No. 22] at pp. 1-2.

Respectfully submitted,

WILLS LAW FIRM, PLLC

/s/ Rhonda H. Wills
Rhonda H. Wills (*Pro Hac Vice*)
Genevieve B. Estrada (*Pro Hac Vice*)
1776 Yorktown, Suite 570
Houston, Texas 77056
Telephone: (713) 528-4455
Facsimile: (713) 528-2047

KRAKOWER DICHIARA, LLC

Michael DiChiara
One Depot Square
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-0303
Facsimile: (866) 417-2333

**ATTORNEYS FOR PLAINTIFFS & MEMBERS
OF THE COLLECTIVE ACTION AND CLASS ACTION**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that the foregoing document has been electronically filed with the clerk of the Court by using the CM/ECF system, which will in turn send a notice of the electronic filing to all counsel of record, on this 20th day of March, 2015.

*/s/ Rhonda H. Wills*
Rhonda H. Wills

26